# Owner's Policy of Title Insurance

**MISSISSIPPI VALLEY TITLE**
Insurance Company

**OLD REPUBLIC**
National Title Insurance Company

Policy Number **OP 109631**

Issued by Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, MISSISSIPPI VALLEY TITLE INSURANCE COMPANY, a Mississippi corporation, and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota corporation (collectively, the "Company") insure, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.

2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from:
   (a) A defect in the Title caused by
       (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
       (ii) failure of any person or Entity to have authorized a transfer or conveyance;
       (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
       (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
       (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
       (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
       (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

3. Unmarketable Title.

4. No right of access to and from the Land.

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to:
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

Countersigned:
**WATKINS & EAGER PLLC**
By [signature]
Authorized Signatory

MVT Form 07-3
ALTA Owner's Policy of Title Insurance 6-17-06

**MISSISSIPPI VALLEY TITLE INSURANCE COMPANY**
By [signature] President
Attest [signature] Secretary

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
By [signature] President
Attest [signature] Secretary

EXHIBIT F

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
      (i) to be timely, or
      (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv) environmental protection;
      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

# CONDITIONS

1. **DEFINITION OF TERMS**
   The following terms when used in this policy mean:
   (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.
   (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
   (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
   (d) "Insured": The Insured named in Schedule A.
   (i) The term "Insured" also includes
      (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
      (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
      (C) successors to an Insured by its conversion to another kind of Entity;
      (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
         (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
         (2) if the grantee wholly owns the named Insured,
         (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
         (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.
   (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.
   (e) "Insured Claimant": An Insured claiming loss or damage.
   (f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.
   (g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.
   (h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.
   (i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.
   (j) "Title": The estate or interest described in Schedule A.
   (k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

2. **CONTINUATION OF INSURANCE**
   The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

3. **NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**
   The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as Insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as Insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

4. **PROOF OF LOSS**
   In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5. **DEFENSE AND PROSECUTION OF ACTIONS**
   (a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.
   (b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish

Page 3

## CONDITIONS con't

the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6. **DUTY OF INSURED CLAIMANT TO COOPERATE**
   (a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.
   (b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**
   In case of a claim under this policy, the Company shall have the following additional options:
   (a) **To Pay or Tender Payment of the Amount of Insurance.**
       To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

       Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.
   (b) **To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.**
       (i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or
       (ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.
       Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8. **DETERMINATION AND EXTENT OF LIABILITY**
   This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.
   (a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of
       (i) the Amount of Insurance; or
       (ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.
   (b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,
       (i) the Amount of Insurance shall be increased by 10%, and
       (ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.
   (c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. **LIMITATION OF LIABILITY**
   (a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a

## CONDITIONS con't

reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as Insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

10. **REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**
All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

11. **LIABILITY NONCUMULATIVE**
The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

12. **PAYMENT OF LOSS**
When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

13. **RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**
(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.
If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

14. **ARBITRATION**
Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

15. **LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**
(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

16. **SEVERABILITY**
In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

17. **CHOICE OF LAW; FORUM**
(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.
Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

18. **NOTICES, WHERE SENT**
Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at 315 Tombigbee Street, Jackson, Mississippi 39201.

Page 5

Owner's Policy

**MISSISSIPPI VALLEY TITLE INSURANCE COMPANY**
**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
**124 ONE MADISON PLAZA, SUITE 2100**
**MADISON, MS 39130**

Agent Name: Roger W. Williams                                Agent #: 525891

Agent Phone #: 601-965-1811

## SCHEDULE A

Policy Number: OP109631                                      File Number: 31080

Amount of Insurance: $16,000,000.00

Date of Policy: July 22, 2008 at 8:00 a.m.

Address Reference: N/A

1.  Name of Insured: G&B Investments, Inc., a Mississippi corporation.

2.  The estate or interest in the Land that is insured by the Insured Mortgage is: FEE SIMPLE.

3.  Title is vested in: G&B Investments, Inc., a Mississippi corporation.

4.  The instrument(s) creating the estate or the interest in the Land are described as follows:

    Various deeds from different parties recorded in the office of the Chancery Clerk of Madison County, Mississippi.

5.  The Land referred to in this policy is situated in the county of Madison state of Mississippi and is described below or, if no description appears below, is the land described in the instrument(s) set forth in item 4 above.

    All that land lying and being situated in the SW 1/4 of Section 1 and the Northeast 1/4 and Northwest 1/4 of Section 12, Township 7 North, Range 1 East, City of Madison, Madison County, Mississippi, and being more particularly described in Exhibit A attached hereto and made a part hereof by reference.

N:\1311\2905\31080\T029A.Owners Policy G&B.wpd

## SCHEDULE B
## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

Item 1.   [Intentionally Deleted]

Item 2.   General and special taxes for 2008 and future years not yet due and payable.

Item 3.   Any prior reservation or conveyance, together with release of damages, of minerals of every kind and character, including, but not limited to, oil, gas, sand and gravel, in, on, and under subject property.

Item 4.   All those matters as set forth on the survey of Michael Ray Love, PLS, dated April 30, 2008, and the accompanying surveyor's inspection report and certificate dated May 16, 2008.

Item 5.   Right of way in favor of Entex filed on June 6, 1985 and recorded in Book 205 at Page 718.

Item 6.   Release of damages clause contained in instrument recorded in Book 54 at Page 520.

Item 7.   Release of damages and billboard restrictions contained in instrument recorded in Book 69 at Page 421.

Item 8.   Exception is hereby made to any portion of subject property lying within the boundary of a public road.

Item 9.   Right of Way in favor of Texas Eastern Transmission, dated March 28, 1955 and recorded in Book 61 at Page 269.

Item 10.  Right of Way in favor of Mississippi Power & Light Company dated April 30, 1982 and recorded in Book 181 at Page 591.

Item 11.  Right of Way in favor of Shell Pipeline Corporation, dated November 30, 1971, and recorded in Book 125 at Page 267. Assigned to Reliant Energy Entex in Book 513 at Page 520.

Item 12.  Right of Way and easement obtained by Jerrell Lavon Holloway a/k/a J.L. Holloway by virtue of that Warranty Deed recorded in Book 2313 at Page 245.

Item 13.  Easement in favor of the City of Madison, dated August 28, 1991 and recorded in Book 288 at Page 718.

Item 14.    Easement in favor of the City of Madison, dated July 22, 1991 and recorded in Book 294 at Page 401.

Item 15.    Easement to the City of Madison, dated July 24, 1991 and recorded in Book 294 at Page 391.

Item 16.    Easement to the City of Madison, dated July 22, 1991 and recorded in Book 294 at Page 393.

Item 17.    Easement in favor of the City of Madison, dated July 22, 1991 and recorded in Book 294 at Page 397.

Item 18.    Corrective Permanent Easement and Right of Way in favor of Madison County, Mississippi, dated April 21, 2008 and recorded in Book 2307 at Page 925, as corrected by instrument recorded in Book 2319 at Page 872.

Item 19.    Right of Way in favor of Mississippi Power & Light Company, dated June 9, 1986 and recorded in Book 220 at Page 547.

Item 20.    Right of Way in favor of Mississippi Power & Light Company, dated August 11, 1986 and recorded in Book 220 at Page 444.

Item 21.    Right of Way in favor of Madison County from Keith Elbert Brown dated August 1, 2007 and recorded in Book 2223 at Page 176.

Item 22.    Temporary Construction Easements from Keith Elbert Brown in favor of Madison County, Mississippi dated August 23, 2007 and recorded in Book 2231 at Page 787 and Book 2231 at Page 792.

Item 23.    Easement contained in Warranty Deed to Madison County, Mississippi and recorded in Book 289 at Page 401.

Item 24.    Corrective Permanent Easement and Right of Way in favor of Madison County, Mississippi, dated April 21, 2008 and recorded in Book 2307 at Page 932, as corrected by instrument recorded in Book 2319 at Page 864.

Item 25.    Deed of Trust executed by G & B Investments, Inc., to Thomas R. Hudson, Trustee for BankPlus, Beneficiary, dated July 10, 2000, filed on August 15, 2000 and recorded in Book 1250 at Page 448 in the amount of $1,201,000.00, being due and payable as follows: July 10, 2003.

Item 26.    Deed of Trust executed by G & B Investments, Inc., to Thomas R. Hudson, Trustee for BankPlus, Beneficiary, dated July 10, 2000, filed on August 18, 2000 and

recorded in Book 1250 at Page 814 in the amount of $1,201,000.00, being due and payable as follows: July 10, 2003.

Item 27.  Deed of Trust executed by G & B Investments, Inc., to Thomas R. Hudson, Trustee for BankPlus, Beneficiary, dated November 30, 2001, filed on December 3, 2001 and recorded in Book 1365 at Page 511 in the amount of $1,701,500.00, being due and payable as follows: November 30, 2003. This Deed of Trust is a renewal and extension of Deed of Trust recorded in Book 1250 at Page 814.

Item 28.  Deed of Trust executed by G & B Investments, Inc., to Thomas R. Hudson, Trustee for BankPlus, Beneficiary, dated November 30, 2002, filed on December 20, 2002 and recorded in Book 1483 at Page 922 in the amount of $3,000,518.50, being due and payable as follows: November 30, 2003. This Deed of Trust is a renewal and extension of Deed of Trust recorded in Book 1365 at Page 511.

Item 29.  Deed of Trust executed by G & B Investments, Inc., to Thomas R. Hudson, Trustee for BankPlus, Beneficiary, dated November 30, 2002, filed on January 31, 2003 and recorded in Book 1498 at Page 273 in the amount of $3,000,518.50, being due and payable as follows: November 30, 2003. This instrument is a re-rerecording of Deed of Trust in Book 1483 at Page 922 to correct an error in the legal description. This Deed of Trust is also a renewal and extension of Deed of Trust recorded in Book 1365 at Page 511.

Item 30.  Deed of Trust executed by G & B Investments, Inc., to Thomas R. Hudson, Trustee for BankPlus, Beneficiary, dated January 26, 2004, filed on February 2, 2004 and recorded in Book 1737 at Page 959 in the amount of $4,000,070.50, being due and payable as follows: January 26, 2005. This Deed of Trust is a renewal and extension of Deed of Trust recorded in Book 1498 at Page 273.

Item 31.  Deed of Trust executed by G & B Investments, Inc., to Thomas R. Hudson, Trustee for BankPlus, Beneficiary, dated December 19, 2005, filed on December 27, 2005 and recorded in Book 2001 at Page 736 in the amount of $4,000,150.00, being due and payable as follows: December 19, 2006.

Item 32.  Deed of Trust executed by G & B Investments, Inc., to Thomas R. Hudson, Trustee for BankPlus, Beneficiary, dated October 10, 2006, filed on October 17, 2006 and recorded in Book 2111 at Page 300 in the amount of $1,000,000.00, being due and payable as follows: October 10, 2009.

Item 33.  Deed of Trust executed by G & B Investments, Inc., to Thomas R. Hudson, Trustee for BankPlus, Beneficiary, dated July 20, 2007, filed on August 3, 2007 and recorded in Book 2223 at Page 797 in the amount of $1,002,529.50, being due and payable as follows: October 10, 2009. This instrument is also a renewal and extension of Deed of Trust recorded in Book 2111 at Page 300.

N:\1811\2008\3108\0\T029A Owners Policy G&B.wpd

Item 34. Deed of Trust executed by G & B Investments, Inc., to Thomas R. Hudson, Trustee for BankPlus, Beneficiary, dated October 10, 2006, filed on October 17, 2006 and recorded in Book 2111 at Page 291 in the amount of $4,500,229.50, being due and payable as follows: October 10, 2007.

Item 35. Judgment No. 2002-0707 against Lillian Thompson, in favor of Franklin Collection Service in the amount of $5,590.82, filed on January 21, 2003 and recorded in Book 34 at Page 292. This Judgment was assigned to G & B Investments, Inc., on December 15, 2006.

N:\1811\T2005\310507T029A.Owners Policy G&B.wpd

EXHIBIT A

Parcel 1:

A tract or parcel of land containing 84.56 acres, more or less, lying and being situated in the Southwest ¼ of Section 1 and the Northwest ¼ of Section 12, Township 7 North, Range 1 East, City of Madison, Madison County, Mississippi and being more particularly described by metes and bounds as follows:

Commencing at found ½ inch iron pin marking the Southeast corner of the Northeast ¼ of the Northwest ¼ of said Section 12; run thence

West for a distance of 758.91 feet; thence

South for a distance of 194.51 feet to the Westerly right of way of Park Place Boulevard and a set ½ inch iron pin marking the Point of Beginning of the herein described property; thence

North 86 degrees 39 minutes 44 seconds West along the North line of the Brown property as recorded in Deed Book 502, Page 615 in the Office of the Chancery Clerk of Madison County for a distance of 591.60 feet to a found ½ inch iron pin marking the Northwest corner of said Brown property; thence

North 00 degrees 32 minutes 56 seconds East for a distance of 193.52 feet to a found ½ inch iron pin; thence

North 87 degrees 58 minutes 06 seconds West for a distance of 8.36 feet to the West line of the East ½ of the Northwest ¼ of said Section 12; thence

North 00 degrees 07 minutes 41 seconds East along said West line of the East ½ of the Northwest ¼ of Section 12 for a distance of 885.51 feet to a set ½ inch iron pin; thence

North 87 degrees 09 minutes 56 seconds West for a distance of 694.39 feet to a found ½ inch iron pin; thence

North 00 degrees 08 minutes 44 seconds West for a distance of 447.14 feet to the South line of said Section 1 and a found ½ inch iron pin; thence

North 87 degrees 09 minutes 20 seconds West for a distance of 631.99 feet to a found ½ inch pipe marking the Southwest corner of said Section 1; thence

North 00 degrees 14 minutes 42 seconds East along the West line of said Section 1 for a distance of 1,570.12 feet to the Easterly right of way of Henderson Road as recorded in Deed Book 289, Page 359 in the Office of the Chancery Clerk of Madison County and a found ½ inch iron pin; thence

Continue along said Easterly right of way of Henderson Road as follows:

North 86 degrees 38 minutes 09 seconds East for a distance of 22.91 feet to a found concrete right of way monument; thence

Northeasterly along the arc of a curve to the right for a distance of 303.56 feet, said curve having a radius of 463.22 feet and a deflection angle of 37 degrees 32 minutes 52 seconds, (chord bearing and distance, North 18 degrees 51 minutes 15 seconds East, 298.16 feet) to a found concrete right of way monument; thence

M:\1811\2001\1080\T029A.Owners Policy G&B.wpd

South 53 degrees 36 minutes 24 seconds East for a distance of 25.45 feet to a found concrete right of way monument; thence

North 36 degrees 39 minutes 28 seconds East for a distance of 139.06 feet to the Southerly right of way of Mississippi Highway No. 463 as recorded in Deed Book 289, Page 359 in the Office of the Chancery Clerk of Madison County and a found concrete right of way monument; thence

Leaving said Easterly right of way of Henderson Road; thence

South 52 degrees 18 minutes 34 seconds East along said Southerly right of way of Mississippi Highway No. 463 for a distance of 2,384.75 feet to a found ½ inch iron pin marking the Southerly right of way of Mississippi Highway No. 463 as recorded in Deed Book 443, Page 440 in the Office of the Chancery Clerk of Madison County; thence

South 8 degrees 44 minutes 34 seconds East along said Southerly right of way of Mississippi Highway No. 463 for a distance of 23.54 feet to a found ½ inch iron pin marking the Northwest corner the Trustmark National Bank property as recorded in Deed Book 489, Pages 786-788 in the Office of the Chancery Clerk of Madison County; thence

South 37 degrees 41 minutes 01 seconds West along the West line of said Trustmark National Bank property for a distance of 132.51 feet to a set ½ inch iron pin; thence

South 00 degrees 52 minutes 07 seconds West along said West line of the Trustmark National Bank property for a distance of 198.71 feet to a found ½ inch iron pin marking the Southwest corner of said Trustmark National Bank property; thence

Continue along the Southerly line of said Trustmark National Bank property as follows:

South 83 degrees 51 minutes 32 seconds East for a distance of 32.22 feet to a found ½ inch iron pin; thence

South 83 degrees 57 minutes 58 seconds East for a distance of 36.69 feet to a found ½ inch iron pin; thence

South 81 degrees 22 minutes 52 seconds East for a distance of 33.73 feet to a set ½ inch iron pin; thence

North 82 degrees 56 minutes 30 seconds East for a distance of 19.93 feet to a set ½ inch iron pin; thence

North 70 degrees 04 minutes 53 seconds East for a distance of 37.09 feet to a set ½ inch iron pin; thence

South 85 degrees 22 minutes 22 seconds East for a distance of 27.53 feet to a set ½ inch iron pin; thence

South 70 degrees 15 minutes 31 seconds East for a distance of 12.20 feet to the Westerly right of way of Park Place Boulevard as recorded in Deed Book 2178, Page 827 in the Office of the Chancery Clerk Madison County and a set ½ inch iron pin; thence

Leaving said Southerly line of said Trustmark National Bank property; thence

South 37 degrees 13 minutes 12 seconds West along said Westerly right of way of Park Place Boulevard for a distance of 79.34 feet to a found concrete right of way marker; thence

South 52 degrees 46 minutes 46 seconds East along said Westerly right of way of Park Place Boulevard for a distance of 37.43 feet to the Westerly right of way of Park Place Boulevard as recorded in Deed Book 2133, Page 900 and Deed Book 2223, Page 176 in the Office of the Chancery Clerk of Madison County and a found concrete right of way marker; thence

South 37 degrees 13 minutes 14 seconds West along said Westerly right of way of Park Place Boulevard for a distance of 643.59 feet to a found concrete right of way marker; thence

Southwesterly along said Westerly right of way of Park Place Boulevard and the arc of a curve to the left for a distance of 10.61 feet, said curve having a radius of 850.00 feet and a deflection angle of 00 degrees 42 minutes 53 seconds, (chord bearing and distance, South 36 degrees 51 minutes 47 seconds West, 10.60 feet) to a set ½ inch iron pin marking the Northeast corner of the Craft property as recorded in Deed Book 2307, Page 111 in the Office of the Chancery Clerk of Madison County; thence

North 89 degrees 36 minutes 28 seconds West along the North line of said Craft property for a distance of 452.51 feet to the West line of the March Bennett Estate partition property as recorded in Deed Book 216, Page 631 in the Office of the Chancery Clerk of Madison County and a set ½ inch iron pin marking the Northwest corner of said Craft property; thence

South 00 degrees 37 minutes 39 seconds West along said West line of the March Bennett Estate partition property for a distance of 288.29 feet to the Northwest corner of Lot 9 of said March Bennett Estate Partition property and a set ½ inch iron pin marking the Southwest corner of the Madison County School District property as recorded in Deed Book 401, Page 415 in the Office of the Chancery Clerk of Madison County; thence

South 88 degrees 02 minutes 22 seconds East along the South line of said Madison County School District property for a distance of 315.34 feet to the Westerly right of way of Park Place Boulevard and a set ½ inch iron pin; thence

Continue along said Westerly right of way of Park Place Boulevard as follows:

Southwesterly along the arc of a curve to the left for a distance of 138.48 feet, said curve having a radius of 850.00 feet and a deflection angle of 9 degrees 20 minutes 04 seconds, (chord bearing and distance, South 9 degrees 36 minutes 56 seconds West, 138.33 feet) to a found concrete right of way monument; thence

South 4 degrees 56 minutes 54 seconds West for a distance of 54.72 feet to a found concrete right of way monument; thence

Southeasterly along the arc of a curve to the left for a distance of 149.24 feet, said curve having a radius of 820.00 feet and a deflection angle of 10 degrees 25 minutes 41 seconds, (chord bearing and distance, South 00 degrees 15 minutes 56 seconds East, 149.04 feet) to a found concrete right of way monument; thence

South 84 degrees 31 minutes 13 seconds West for a distance of 80.00 feet to a found concrete right of way monument; thence

Southeasterly along the arc of a curve to the left for a distance of 139.01 feet, said curve having a radius of 900.01 feet and a deflection angle of 8 degrees 50 minutes 57 seconds, (chord bearing and distance, South 9 degrees 54 minutes 16 seconds East, 138.87 feet) to a found concrete right of way monument; thence

North 75 degrees 20 minutes 47 seconds East for a distance of 80.00 feet to a found concrete right of way monument; thence

Southeasterly along the arc of a curve to the left for a distance of 405.77 feet, said curve having a radius of 820.00 feet and a deflection angle of 28 degrees 21 minutes 10 seconds, (chord bearing and distance, South 28 degrees 28 minutes 26 seconds East, 401.65 feet) to a found concrete right of way monument; thence

South 42 degrees 39 minutes East for a distance of 30.19 feet to a found concrete right of way monument; thence

Southeasterly along the arc of a curve to the right for a distance of 59.30 feet, said curve having a radius of 470.00 feet and a deflection angle of 7 degrees 13 minutes 44 seconds, (chord bearing and distance, South 39 degrees 02 minutes 08 seconds East, 59.26 feet) to the **Point of Beginning**

Parcel 2:

A tract or parcel of land containing 20.54 acres, more or less, lying and being situated in the Northeast ¼ of the Northwest ¼ and the Northwest ¼ of the Northeast ¼ of Section 12, Township 7 North, Range 1 East, City of Madison, Madison County, Mississippi and being more particularly described by metes and bounds as follows:

Beginning at found ½ inch iron pin marking the Southeast corner of the Northeast ¼ of the Northwest ¼ of said Section 12 and the Southeast corner of said March Bennett Estate partition property; run thence

North 86 degrees 47 minutes 04 seconds West along the South line of the March Bennett Estate partition property as recorded in Deed Book 216, Page 631 in the Office of the Chancery Clerk of Madison County for a distance of 491.95 feet to a found ½ inch iron pin; thence

South 00 degrees 50 minutes 36 seconds East for a distance of 237.95 feet to a found 1 inch pipe marking the Northeast corner of the Brown property as recorded in Deed Book 502, Page 615 in the Office of the Chancery Clerk of Madison County; thence

North 86 degrees 39 minutes 44 seconds West along the North line of said Brown property for a distance of 150.02 feet to the Easterly right of way of Park Place Boulevard and a set ½ inch iron pin; thence

Continue along said Easterly right of way of Park Place Boulevard as follows:

Northwesterly along the arc of a curve to the left for a distance of 148.32 feet, said curve having a radius of 570.00 feet and a deflection angle of 14 degrees 54 minutes 34 seconds, (chord bearing and distance, North 35 degrees 11 minutes 43 seconds West, 147.91 feet) to a found concrete right of way monument; thence

North 42 degrees 39 minutes West for a distance of 30.19 feet to a found concrete right of way monument; thence

Northwesterly along the arc of a curve to the right for a distance of 416.20 feet, said curve having a radius of 720.00 feet and a deflection angle of 33 degrees 07 minutes 12 seconds, (chord bearing and distance, North 26 degrees 05 minutes 24 seconds West, 410.43 feet) to a found concrete right of way monument; thence

North 65 degrees 14 minutes 09 seconds East for a distance of 66.64 feet to a found concrete right of way marker; thence

North 24 degrees 45 minutes 51 seconds West for a distance of 59.80 feet to a found concrete right of way marker; thence

South 65 degrees 14 minutes 09 seconds West for a distance of 47.52 feet to a found concrete right of way marker; thence

Northeasterly along the arc of a curve to the right for a distance of 119.14 feet, said curve having a radius of 720.00 feet and a deflection angle of 9 degrees 28 minutes 51 seconds, (chord bearing and distance, North 00 degrees 12 minutes 29 seconds East, 119.00 feet) to a found concrete right of way marker; thence

North 4 degrees 56 minutes 54 seconds East for a distance of 54.72 feet to a found concrete right of way marker; thence

Northeasterly along the arc of a curve to the right for a distance of 422.44 feet, said curve having a radius of 750.00 feet and a deflection angle of 32 degrees 16 minutes 19 seconds, (chord bearing and distance, North 21 degrees 05 minutes 04 seconds East, 416.88 feet) to a found concrete right of way marker; thence

North 37 degrees 13 minutes 14 seconds East for a distance of 487.16 feet to the North line of said Section 12 and a set ½ inch iron pin; thence

Leaving said Easterly right of way of Park Place Boulevard; thence

South 87 degrees 09 minutes 17 seconds East along said North line of said Section 12 for a distance of 475.66 feet to the West line of the McLeod/Filgo property as recorded in Deed Book 1730, Page 259 in the Office of the Chancery Clerk of Madison County and a set ½ inch iron pin; thence

South 13 degrees 55 minutes 12 seconds West along said West line of the McLeod/Filgo property for a distance of 11.40 feet to a set ½ inch iron pin marking the Southwest corner of said McLeod/Filgo property; thence

South 74 degrees 29 minutes 27 seconds East along the South line of said McLeod/Filgo property for a distance of 28.53 feet to the East line of said March Bennett Estate partition property and a set ½ inch iron pin; thence

South 00 degrees 49 minutes 06 seconds West along said East line of the March Bennett partition property for a distance of 624.25 feet to a set ½ inch iron pin marking the Northeast corner of Lot 3 of said March Bennett Estate partition property and the Northeast corner of the Thompson property as recorded in Deed Book 452, Page 131 in the Office of the Chancery Clerk of Madison County; thence

North 88 degrees 00 minutes 57 seconds West along the North line of said Thompson property and Lot 3 of said March Bennett Estate partition property for a distance of 664.60 feet to a found ½ inch iron pin marking the Northwest corner of said Thompson property; thence

South 00 degrees 39 minutes 59 seconds West along the West line of said Thompson property and said Lot 3 of the March Bennett Estate partition property for a distance of 331.24 feet to a found ½ inch iron pin marking the Southwest corner of said Thompson property and said Lot 3 of the March Bennett Estate

partition; thence

South 88 degrees 16 minutes 54 seconds East along the South line of said Thompson property and said Lot 3 of the March Bennett Estate partition property for a distance of 663.66 feet to a set ½ inch iron pin marking the Southeast corner of said Lot 3 of the March Bennett Estate partition property; thence

South 00 degrees 49 minutes 06 seconds West along the East line of said March Bennett Estate partition property for a distance of 328.26 feet to the **Point of Beginning.**

LESS AND EXCEPT:

An undivided 1/8 interest in and to a parcel or tract of land containing 4.338 acres, more or less, lying and being situated in the SE1/4 of the NW1/4 of Section 12, T7N, R1E, Madison County, Mississippi and said parcel being more particularly described as follows:

Commencing at a found 1" pipe representing the Northwest corner of the East ½ of the Southwest 1/4 of Section 12, T7N, R1E, Madison County, Mississippi; run thence South 86 degrees 30 minutes 10 seconds East for a distance of 685.16 feet; run thence North 00 degrees 56 minutes 22 seconds West for a distance of 917.83 feet to the Northwest corner of the Gladys Odell Brown Tract, as described and recorded in Deed Book 141 at Page 215 of the Land Records of Madison County; run thence South 87 degrees 47 minutes 30 seconds East and along the North line of said tract for a distance of 208.87 feet to the Northeast corner of said Gladys Odell Brown tract; run thence North 00 degrees 56 minutes 22 seconds West for a distance of 208.69 feet to the POINT OF BEGINNING of the following described parcel or tract of land, and from said point; continue thence North 00 degrees 56 minutes 22 seconds West for a distance of 238.10 feet; run thence North 86 degrees 36 minutes 45 seconds West for a distance of 171.45 feet; run thence South 89 degrees 49 minutes 03 seconds West for a distance of 685.19 feet; run thence South 00 degrees 36 minutes 08 seconds West for a distance of 193.33 feet; run thence South 86 degrees 30 minutes 10 seconds East for a distance of 863.87 feet back to the POINT OF BEGINNING of the above described parcel or tract of land.

AND ALSO LESS AND EXCEPT:

An undivided 2/3 interest in and to Lot 4 as described in Exhibit A to Partition Deed at Book 216, Page 631 and as set forth on plat thereof shown on Exhibit B to said Partition Deed at Book 216 at Page 631.