Case 10-00040-NPO   Doc 339-5   Filed 01/04/11   Entered 01/04/11 16:44:53   Desc
Exhibit 5   Depo of Parrish Fortenberry   Page 1 of 15
**Deposition of Parrish Fortenberry**

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:
   JON CHRISTOPHER EVANS         Case No. 09-03763-NPO
   AND JOINTLY ADMINISTERED
   RELATED CASES
   DEBTORS.                           Chapter 7
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
G&B INVESTMENTS, INC.                PLAINTIFF
   V.             ADV. PROC. NO. 10-00040-NPO
DEREK A. HENDERSON, TRUSTEE
FOR THE BANKRUPTCY ESTATE OF
JON CHRISTOPHER EVANS, ET AL.      DEFENDANTS

\*\*\*\*\*\*\*\*\*\*

30(b)(6) DEPOSITION OF
MISSISSIPPI VALLEY TITLE INSURANCE COMPANY,
THROUGH ITS REPRESENTATIVE,
PARRISH FORTENBERRY
Taken at the offices of
Adams and Reese,
111 Capitol Street, Suite 350,
Jackson, Mississippi,
on Friday, November 19, 2010,
beginning at approximately 9:00 a.m.

\*\*\*\*\*\*\*\*\*\*

APPEARANCES NOTED HEREIN

CHRISTY R. SIEVERT, CSR, RPR
PROFESSIONAL COURT REPORTING, LLC
Registered Professional Reporter
Certified Shorthand Reporter
Mississippi CSR No. 1421
Post Office Box 320928
Jackson, Mississippi 39232-0928
www.procourtreporting.com

COPY

**Professional Court Reporting, LLC**
**601.919.8662**

EXHIBIT 5

**Deposition of Parrish Fortenberry**

2

```
 1                    APPEARANCES
 2
 3   COUNSEL FOR MISSISSIPPI VALLEY TITLE
     INSURANCE and OLD REPUBLIC NATIONAL
 4   TITLE INSURANCE COMPANY:
 5       MR. POWELL G. OGLETREE, JR.
         MR. M. SCOTT JONES
 6       Adams and Reese, LLP
         111 East Capitol Street, Suite 350
 7       Jackson, Mississippi   39201
 8       MR. DAVID CLARK
         MR. ROB DODSON
 9       Bradley, Arant, Boult & Cummings
         Post Office Box 1789
10       Jackson, Mississippi   39215
11
     COUNSEL FOR BANK OF FOREST:
12
         MR. WILLIAM LISTON, III
13       Liston & Lancaster
         2648 Ridgewood Road, Suite B
14       Jackson, Mississippi   39216
15       MR. W. LAWRENCE DEAS
         Deas & Deas
16       Post Office Box 7282
         Tupelo, Mississippi   38802
17
18   COUNSEL FOR MERCHANTS & FARMERS BANK:
19       MR. JEFF D. RAWLINGS
         Rawlings & MacInnis
20       1296 Highway 51
         Madison, Mississippi   39110
21
22   COUNSEL FOR CHARLES EVANS:
23       MR. TERRY R. LEVY
         Daniel, Coker, Horton & Bell
24       4400 Old Canton Road, Suite 400
         Jackson, Mississippi   39211
25
```

**Deposition of Parrish Fortenberry**

3

```
 1   (Continued:)
 2   COUNSEL FOR G&B INVESTMENTS, INC.:
 3       MR. MICHAEL CORY
         MR. DALE DANKS, JR.
 4       Danks, Miller & Cory
         213 South Lamar Street
 5       Jackson, Mississippi  39201
 6   COUNSEL FOR HERITAGE BANK:
 7       MR. MICHAEL SIMMONS
         Cosmich, Simmons & Brown
 8       The Plaza Building
         120 North Congress Street, Suite 400
 9       Jackson, Mississippi 39201
10
     ALSO PRESENT:
11
         DONALD JOSEPH BRATA
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 10-00040-NPO   Doc 339-5   Filed 01/04/11   Entered 01/04/11 16:44:53   Desc
Exhibit 5   Depo of Parrish Fortenberry   Page 4 of 15

**Deposition of Parrish Fortenberry**

54

```
 1   yes.  So, yeah.
 2          Q.      Okay.  Now, are the approved
 3   attorneys, as far as Valley is concerned, allowed
 4   to market themselves to banks as approved
 5   attorneys for Valley?
 6          A.      No.  Well, we would not want them
 7   to -- I mean, we don't control what they do or
 8   what they say, so. . .  If we found out they
 9   were, we would take them off our list, typically.
10          Q.      Well, the word "market" is a big
11   word.
12          A.      Right.
13          Q.      I don't mean publish things in the
14   newspaper.
15          A.      Right.
16          Q.      I don't mean put things on
17   television.  What I mean is, if they see a banker
18   at lunch, can they say, Hey, you know, I happen to
19   be an approved attorney for Valley, and I'd be
20   happy to talk to you about any closing work,
21   property transaction work the bank may have?
22          A.      I don't think we have any stated
23   rules one way or the other on that.
24          Q.      Doesn't that, in fact, happen,
25   though?
```

**Deposition of Parrish Fortenberry**

55

```
 1            MR. JONES:  Object to the form; calls
 2   for speculation.
 3            THE WITNESS:  I would assume it does.
 4   And if the bank has any questions, they're
 5   certainly capable of calling and asking if the
 6   person is, and we'll tell them if they are.
 7   MR. LISTON, CONTINUED:
 8       Q.    Right.  And, in fact, the banks would
 9   want the attorneys to tell them that, would they
10   not, because they'd want to know which attorneys
11   can do the work, send it to Valley, get the title
12   insurance issued, that they would like to have
13   before they go do the transaction?
14            MR. JONES:  Object to the form; calls
15   for speculation.
16            THE WITNESS:  The -- I've never
17   really seen any bank care where it's coming from,
18   the title insurance.  It's typically that they can
19   obtain title insurance.  So, I mean, about the
20   question of whether or not, you know, because it's
21   Valley, I don't know.
22   MR. LISTON, CONTINUED:
23       Q.    Are there two kinds of title
24   insurance policies, roughly?  Lender policies and
25   owner policies?
```

**Deposition of Parrish Fortenberry**

61

```
 1  MR. LISTON, CONTINUED:
 2      Q.      Okay.
 3      A.      I don't know.  I'll say that.  One of
 4  the problems with fraud is just -- it's so easy to
 5  record fraudulent deeds and fraudulent
 6  cancellations, that even an independent search,
 7  you're not going to pick up fraud is the problem.
 8      Q.      A glaring fraud you might pick up,
 9  though?
10              MR. JONES:  Object to the form.
11              THE WITNESS:  A glaring fraud, you
12  might, but not one committed -- I mean, an
13  attorney that knows can look it up, knows how to
14  fill out satisfactions and cancellations or deeds.
15  It would be hard to pick those up.
16  MR. LISTON, CONTINUED:
17      Q.      Well, let's talk about a particular
18  fraud.  In the 2009 White Oaks loan, Mr. Charles
19  Evans certified to Valley that the property was
20  owned at the time of his certification by G&B
21  Investments.
22      A.      Okay.
23      Q.      Right?  You're aware it was not?
24      A.      It's -- my recollection is it was
25  not.  I mean, without a title report, I don't
```

**Deposition of Parrish Fortenberry**

69

```
 1      Q.      Where did Charles Evans represent
 2  he -- to Valley that he was representing the Bank
 3  of Forest?  Have you seen that in writing?
 4      A.      No, not in writing.  Well, he called
 5  and asked on their behalf, and that's typically
 6  representing the lender and the purchaser.
 7      Q.      How do you know he wasn't
 8  representing a guy named Chris Evans?
 9      A.      I believe aren't there cases that say
10  that, the ethics rules?
11      Q.      Are we going to talk some law?
12      A.      Not really.
13      Q.      Do you want to talk law?
14      A.      Not particularly.
15      Q.      I'm just asking you factually.
16      A.      Factually, no.
17      Q.      You adopted the word "their."  I want
18  to find out what your basis is.  Do you know for a
19  fact --
20      A.      Oh, no.
21      Q.      -- Charles Evans was representing the
22  Bank of Forest?
23      A.      No.
24      Q.      Okay.  And approved attorneys
25  transmit the binder fees and the premiums to
```

**Professional Court Reporting, LLC**
**601.919.8662**

**Deposition of Parrish Fortenberry**

70

```
1    Valley, don't they?
2         A.     Typically.
3         Q.     Okay.  And the approved attorneys
4    receive from Valley the title commitments?
5         A.     Typically.
6         Q.     And deliver them to whoever needs
7    them, correct?
8         A.     Typically, yes.
9         Q.     And the approved attorneys receive
10   from Valley the title policies, and, again,
11   deliver those to whoever might need them, right?
12        A.     Yes, typically.
13        Q.     In the typical course of these
14   things, I know there are probably exceptions, but
15   Valley has little to no contact with the insured
16   before the title policy is issued, correct?
17        A.     Correct.
18        Q.     Okay.  So the only person with whom
19   the insured would be in contact, as a conduit for
20   Valley, is going to be that approved attorney?
21        A.     Typically.  I mean, they're certainly
22   able to call us and ask if they have something --
23   any questions.
24        Q.     Okay.  I've heard some number or seen
25   some number in this litigation of the total amount
```

Case 10-00040-NPO   Doc 339-5   Filed 01/04/11   Entered 01/04/11 16:44:53   Desc
Exhibit 5   Depo of Parrish Fortenberry   Page 9 of 15

**Deposition of Parrish Fortenberry**

71

1  of -- it may be premiums that Valley received due
2  to any acts of Charles Evans.  And by "acts," I
3  mean applications for commitments or policies.
4  What's that number?
5       A.      The -- I don't know the breakdown.
6  The total of commitment fees, title insurance
7  premiums and fees for endorsements, there were
8  some endorsements to policies, it was about
9  195,000 over this course of -- since 2002 to 2009.
10      Q.      Is it fair to say -- I know the
11 payout is more than the premium.  Mr. Jones
12 pointed that out the other day.
13      A.      Slightly.
14      Q.      But is it fair to say with every
15 transaction that Charles Evans submitted for
16 approval to Valley, Valley had a financial
17 interest in that transaction?  That was a bad
18 question.
19      A.      Uh-huh (affirmative response).
20      Q.      It was vague.  Let me rephrase it.
21      A.      Please.
22      Q.      Every time Charles Evans did anything
23 on behalf of the Bank of Forest in regards to the
24 2008 or 2009 White Oaks loan, Valley made or stood
25 to make either a binder fee or a premium off that?

**Deposition of Parrish Fortenberry**

72

```
1      A.     Well, anything -- well, if he
2  submitted an application and -- for a title
3  certificate for a commitment, then, yes, we would
4  make a fee off the commitment fee or if he
5  submitted it for a premium -- a policy and we
6  issued the policy, yes, we would make a premium
7  off the policy.
8      Q.     And those are the two things he did,
9  right?  He submitted applications for commitments
10 for policies --
11     A.     Just in general --
12     Q.     -- that involved the Bank of Forest?
13     A.     Well, in 2008, on that loan, yes, on
14 both.  On the 2009, he only submitted the first
15 certificate for a commitment.
16     Q.     Didn't he submit an application for
17 the policy in 2009, or did it not get that far?
18     A.     No, it did not get that far.
19     Q.     Okay.  That's fine.
20            All right.  Let's look at documents.
21 I'm going to get you guys on that side of the
22 table to shuffle through these, if that's okay.
23 Take a look at No. 1, please, sir.
24     A.     Okay.
25     Q.     This is a brochure -- or a copy of a
```

Case 10-00040-NPO   Doc 339-5   Filed 01/04/11   Entered 01/04/11 16:44:53   Desc
Exhibit 5   Depo of Parrish Fortenberry   Page 11 of 15

**Deposition of Parrish Fortenberry**

83

```
 1       A.      Since then?
 2       Q.      Yes.
 3       A.      A little bit, yes.
 4       Q.      Tell me how.
 5       A.      I'm trying to think of how it's
 6  different.  We changed the certification form,
 7  require actual copies of documents now.  Do a
 8  little -- do additional background search on if
 9  somebody wants to become an approved attorney or
10  an agent.  I think those are the fundamental
11  changes.
12       Q.      Okay.  I think y'all -- before
13  September 2009, you didn't charge the approved
14  attorneys a fee to make an application for
15  approved attorney, and now they are charged a fee?
16       A.      Right.
17       Q.      What other screening criteria do you
18  have that you didn't have then?
19       A.      I think that's everything.  I think
20  it's just the investigation.  With that fee, they
21  go back and run some different independent
22  searches.  So. . .
23       Q.      Okay.  You mentioned that the form of
24  the application and title certification has
25  changed and now attorneys are required to attach
```

**Deposition of Parrish Fortenberry**

84

```
1   documents?
2        A.     Right.
3        Q.     What kind of documents?
4        A.     The vesting deed and the deeds of
5   trust.
6        Q.     Okay.  So in other words, when an
7   attorney represents to Valley that fee simple
8   title of the property is in a certain party,
9   they're actually required to attach that
10  instrument which shows that fee simple title is in
11  that party, right?
12       A.     Right.  There would be such a
13  document, yes.
14       Q.     Okay.  Was it feasible for Valley to
15  have had those measures before 2008?
16              MR. JONES:  Object to the form; calls
17  for speculation.
18              THE WITNESS:  Yes.
19  MR. LISTON, CONTINUED:
20       Q.     Any reason you can tell me why Valley
21  did not have those measures before 2008?
22       A.     We've been in business for 70 years.
23  Never been a necessity or a problem or needed it.
24  And so, I mean, there are certainly -- you can
25  forge -- unfortunately, you can forge deeds and
```

**Deposition of Parrish Fortenberry**

85

```
 1   deeds of trust fairly easily.  I believe in this
 2   very transaction -- not in Bank of Forest, but in
 3   this whole Evans mess, he forged several reported
 4   documents.  So. . .
 5        Q.    Okay.  Let me ask this question:
 6   Even the best attorneys can make an error in their
 7   title searches, I'm sure?
 8        A.    Yes.
 9        Q.    But -- and I'm not going to ask about
10   those.
11        A.    I think Lawrence is admitting over
12   there.
13        Q.    That's fine.  And I'm not asking
14   about instances in the past where Valley has found
15   that a lawyer breached, you know, whatever the
16   standard of care was doing a title search.
17              MR. JONES:  Object to the form.
18   MR. LISTON, CONTINUED:
19        Q.    I'm asking about instances where
20   Valley determined after the fact that a
21   certification was fraudulent; in other words, it
22   was a misrepresentation by the lawyer.
23        A.    Uh-huh (affirmative response).
24        Q.    Has that ever arisen before the
25   Charles Evans debacle, that you know of?
```

Case 10-00040-NPO   Doc 339-5   Filed 01/04/11   Entered 01/04/11 16:44:53   Desc
Exhibit 5   Depo of Parrish Fortenberry   Page 14 of 15

**Deposition of Parrish Fortenberry**

139

```
 1  loan was fraudulent?
 2              MR. JONES:  Object to the form.
 3              You can answer to the extent you
 4  know.
 5              THE WITNESS:  It was wrong whether it
 6  was fraud -- you know, I guess that goes to his
 7  intent, and so. . .
 8  MR. LISTON, CONTINUED:
 9       Q.     It was -- it was a misrepresentation.
10  Is that a better word?
11       A.     Yeah.
12       Q.     Valley agrees that he made a
13  misrepresentation in those regards?
14              MR. JONES:  Object.  You said "it."
15  What are you referring to as "it"?
16  MR. LISTON, CONTINUED:
17       Q.     At least the 2009 White Oaks
18  certification, you would agree that was a
19  misrepresentation by Evans?
20              MR. JONES:  The application and
21  certification from Charles Evans to --
22  MR. LISTON, CONTINUED:
23       Q.     The application.
24       A.     Yes.  Well, I'm sorry, can you --
25       Q.     Sure.  Let me --
```

**Deposition of Parrish Fortenberry**

140

```
1       A.      It's getting confusing.
2       Q.      Yeah, we're going back and forth.
3  Let me state this the way I need to.
4               Does Valley agree that in the 2009
5  White Oaks loan application for the commitment,
6  that Evans provided to Valley, that it contained
7  misrepresentation about who the fee simple owner
8  of the property was?
9               MR. JONES:  Object to the form to the
10 extent it calls for saying a commitment is a
11 representation.
12              THE WITNESS:  Yes.
13 MR. LISTON, CONTINUED:
14      Q.      And Valley filed a suit against Evans
15 alleging that he had engaged in fraudulent conduct
16 as referenced by this paragraph, right?
17      A.      Yes.
18      Q.      So consequently, Valley must have had
19 a good faith belief of that fact before it filed
20 this, correct?
21      A.      Yes.
22      Q.      Paragraph No. 8 of this affidavit
23 reflects that Valley relied on title certificates
24 provided by Charles Evans to issue over a hundred
25 title insurance policies to various lenders,
```