UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

IN RE:

JON CHRISTOPHER EVANS,   CASE NO. 09-03763-NPO

DEBTOR.   CHAPTER 7

*Jointly Administered with Related Cases*

---

G&B INVESTMENTS, INC.
    PLAINTIFF

VS.   ADV. PROC. NO. 10-00040-NPO

DEREK A. HENDERSON, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF JON CHRISTOPHER
EVANS, *et al.*   DEFENDANTS

---

### AFFIDAVIT OF GEORGE M. PIERSON

---

STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE

The undersigned having been duly sworn, states on his oath as follows:

1. I am an adult and otherwise legally competent person and have personal knowledge of the matters set forth herein.

2. I have been retained by G&B to offer my professional opinion relative to the actions or lack of action of Mississippi Valley Title Insurance Company and Old Republic Insurance Company in connection with their "Approved Attorneys", and specifically in connection with Charles Evans.



3. My relevant education training and experience is as follows: Licensed Attorney at Law in the State of Louisiana since 1976; Licensed Title Insurance Agent in the State of Louisiana since 1977, representing The Security Title Guarantee Corporation of Baltimore and First American Title Insurance Company; Attorney in private practice from 1976 until 1994 concentrating in the area of real estate law and closings, then again in private practice from September, 2000 to the present, while continuing to concentrate in the area of real estate law and closings began providing consulting services to the title insurance industry in Louisiana; From August, 1994 until September, 2000 first appointed by The Security Title Guarantee Corporation of Baltimore as its Assistant Vice President and Regional Manager, then its Regional Vice President for the States of Alabama, Louisiana and Mississippi; Member and Past Chairman of the Uniform Title Standards Section of the Baton Rouge Bar Association; Former Member of the Louisiana Land Title Association; Served from 1994 to 2006 on the Board of Directors of the Louisiana Land Title Association; 2002-2003 served as President of the Louisiana Land Title Association; Past Co-Chairman of the Louisiana Department of Insurance and Louisiana Land Title Association Industry Task Force formed in 1997; Recipient of the 1999 and 2000 Title Person of the Year Award presented by the Louisiana Land Title Association; 2000 graduate of the American Land Title Association Land Title Institute Management Development Program.

4. Based on my experience, title companies in the exercise of reasonable care should have policies and procedures that provide for the monitoring, auditing, and supervising of their Approved Attorneys and Authorized Agents. These policies and procedures should provide for title insurance audit matters such as the inspection of

2

escrow accounts; regular audits of title and closing files; production of vesting documents and proof of satisfaction of all title insurance commitment requirements prior to issuance of policies; production of settlement statements and account disbursement ledgers, cancelled checks and deposit slips; and copies of abstracts of title.

5. In my opinion based on the fact I have reviewed and the facts set forth in the Response of G&B to the Title Companies' Motion For Partial Summary Judgment, had these such policies and procedures been in place, then more likely than not the wrongful activities and ongoing fraudulent schemes being carried out by Charles Evans would have been discovered, and he should have been removed as an Approved Attorney prior to the transactions with G&B and the Banks involving the real property owned by G&B and ultimately purchased by Charles Evans or an entity owned and/or controlled by him.

6. It is well known in the title insurance industry that the general public, specifically including lending institutions and other insured's under policies issued by Mississippi Valley Title and/or Old Republic, routinely rely on the stamp of approval of a title commitment and/or title insurance policy and/or promise of a title insurance policy in going forward with the financing and closing of land transactions.

7. In my opinion Mississippi Valley Title and/or Old Republic failed to have reasonable policies and procedures to properly monitor, supervise and audit its Approved Attorneys, such as Charles Evans, in connection with the issuance of title commitments and policies.

8. In my opinion Mississippi Valley Title and/or Old Republic failed to have any reasonably prudent underwriting procedures that would have allowed them to timely detect and discover the ongoing fraudulent activities and various fraudulent schemes of

its Approved Attorney, Charles Evans. This would include a general prohibition against approved attorneys working on transactions whereby the approved attorney or a close family relation has a financial interest in the transaction.

9. In my opinion title insurance companies should take reasonable steps to ensured that their agents and attorneys properly manage their business accounts through which funds are handled to fund sale and loan closings. It is apparent from the testimony of representatives of the Title Companies that Charles Evans was not properly maintaining his escrow account.

10. In my opinion, more likely than not, had Mississippi Valley Title and/or Old Republic provided for appropriate supervision and audits of its approved attorneys and authorized agents, the fraudulent conduct of its Approved Attorney, Charles Evans would have been discovered prior to the closing of the G&B property known as Tract IV.

**THUS DONE AND SIGNED** at my office in the State of Louisiana, on this 4th day of January, 2011, before me, Notary, after due reading of the whole.

George M. Pierson

Mary Olive Pierson, Notary Public
Bar Roll Number: 11004

MARY OLIVE PIERSON
BAR ROLL NO. 11004
MY COMMISSION IS FOR LIFE

4