IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
DEC 16 2010
J. T. NOBLIN CLERK
BY_____ DEPUTY

UNITED STATES OF AMERICA

v.

CRIMINAL NO. 3:10CR 118 DPJ-FKB

CHARLES H. EVANS, JR. AND
JON CHRISTOPHER EVANS

18 U.S.C. § 1956(h)
18 U.S.C. § 1344

**The United States Attorney charges:**

At all times relevant to this information:

### The Defendants

1. Defendant **CHARLES H. EVANS, JR.** ("**CHARLES EVANS**") is an attorney operating The Evans Firm in Jackson, Mississippi. Defendant **CHARLES EVANS** was an approved attorney for Mississippi Valley Title Company ("MVT"), authorized to provide title opinions and prepare certificates of title for MVT, which MVT used and relied upon in order to issue title insurance policies to financial institutions making loans for the purchase of real estate.

2. Defendant **JON CHRISTOPHER EVANS** ("**CHRIS EVANS**"), the brother of Defendant **CHARLES EVANS**, is also an attorney in Jackson, Mississippi, who served as the registered agent for numerous companies in the Jackson, Mississippi, area, which were owned, operated, and controlled by the Defendants.

3. Defendants **CHARLES EVANS** and **CHRIS EVANS** are also the owners of Gulf States Publishing, which publishes and distributes telephone directories in the Jackson, Mississippi, metro area.

### The Victims

4. That at all times material herein, the Bank of Texas, Dallas, Texas; First Bank and


EXHIBIT 12

Trust, New Orleans, Louisiana; Renasant Bank, Tupelo, Mississippi; Independent Bank, Mckinney, Texas; Community Bank, Forest, Mississippi; Bank of America, N.A., Charlotte, North Carolina; First Bank of McComb, McComb, Mississippi; Guaranty Bank & Trust Company, Belzoni, Mississippi; First Tennessee Bank, Memphis, Tennessee; Citizens National Bank, Meridian, Mississippi; Bank of Yazoo City, Yazoo City, Mississippi; Dallas City Bank, Dallas, Texas; BankPlus, Ridgeland, Mississippi; Plains Capital Bank, Lubbock, Texas; Bank of Bartlett, Bartlett, Tennessee; Trust One Bank, Memphis, Tennessee; Prosperity Bank, El Campo, Texas; Metropolitan Bank, Crystal Springs, Mississippi; Regions Bank, Birmingham, Alabama; BancorpSouth Bank, Tupelo, Mississippi; Texas Capital Bank, Dallas, Texas; Magna Bank, Memphis, Tennessee; Texas Star Bank, Van Alstyne, Texas; Britton & Koontz Bank, N.A., Natchez, Mississippi; American Bank of Texas, Sherman, Texas; First Alliance Bank, Cordova, Tennessee; First Texoma National Bank, Durant, Oklahoma; Omni Bank, Jackson, Mississippi; Merchants and Farmers Bank, Kosciusko, Mississippi; Sovereign Bank, Dallas, Texas; Cadence Bank, Starkville, Mississippi; Bankfirst Financial Services, Macon, Mississippi; First State Bank, Holly Springs, Mississippi; Holmes County Bank and Trust Company, Lexington, Mississippi; American National Bank of Texas, Terrell, Texas; First Security Bank, Batesville, Mississippi; Bank of Forest, Forest, Mississippi; Wachovia Corporation, Mobile, Alabama; Heritage Banking Group, Carthage, Mississippi; State Bank & Trust Company, Greenwood, Mississippi; Copiah Bank, Hazlehurst, Mississippi; Patriot Bank, Memphis, Tennessee; Legacy Texas Bank, Richardson, Texas; Compass Bank, Birmingham, Alabama; Madison County Bank, Madison, Mississippi; Commercial Bank and Trust, Paris, Tennessee; North Dallas Bank and Trust, Dallas, Texas; Inwood National Bank, Dallas, Texas; First National Bank of Trenton, Trenton, Texas;

Bank of the South, Pensacola, Florida; Northern Trust, National Association, Miami, Florida; among others, were financial institutions which were engaged in, and the activities of which affected, interstate commerce.

## COUNT 1

5.   That from on or before January 2003 and continuously thereafter up to and including October 2009, in Madison County in the Jackson Division of the Southern District of Mississippi, and elsewhere, the defendants **CHARLES H. EVANS, JR.** and **JON CHRISTOPHER EVANS**, knowingly did conspire with each other and with persons known and unknown to the Grand Jury to conduct and attempt to conduct financial transactions involving the use of financial institutions which were engaged in, and the activities of which affected, interstate commerce, which financial transactions involved the proceeds of specified unlawful activity, that is, bank fraud, with the intent to promote the carrying on of the same specified unlawful activity just described, and that while conducting and attempting to conduct such financial transactions the defendants knew that the property involved in those financial transactions represented the proceeds of some form of unlawful activity, in violation of Section 1956(a)(1)(A)(i), Title 18, United States Code.

### Manner and Means

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

7.   In 2003, in order to pay down debt held by their company Gulf States Publishing and to enrich themselves, the Defendants **CHARLES EVANS** and **CHRIS EVANS** devised a plan to fraudulently secure mortgage proceeds from financial institutions by misrepresenting to

such financial institutions the legal descriptions, title and lien history, and ownership of real estate the Defendants were intending to purchase.

8. The Defendants **CHARLES EVANS** and **CHRIS EVANS** began their scheme by contracting to purchase multi-acre tracts of land. However, before actually purchasing and acquiring a warranty deed for such multi-acre tract, the Defendants would covertly and fictitiously subdivide the multi-acre tract on paper and fraudulently manipulate the legal descriptions and title history of the property, and sometimes manufacture false warranty deeds, in order to secure mortgages on the individual, subdivided plots of land from multiple banks using various companies owned and controlled by the Defendants. Based upon these fraudulently manufactured documents and misrepresentations, the scheme resulted in the Defendants receiving a larger aggregate amount of money for the land fictitiously subdivided than would have otherwise been made available to them if the entire tract had been financed legally via a single loan from one financial institution.

9. The Defendants **CHARLES EVANS** and **CHRIS EVANS** used the excess mortgage proceeds resulting from this scheme to pay the respective mortgages on the property financed, pay on the debt held by Gulf States Publishing, enrich themselves, and continue their scheme of fraudulently securing mortgage proceeds on covertly and fictitiously subdivided land using manipulated legal descriptions and sometimes false warranty deeds.

10. The Defendants **CHARLES EVANS** and **CHRIS EVANS** continued acquiring property through this scheme for a number of years by using different banks and appraisal companies, as well as various companies owned and controlled by the Defendants, and by falsifying the financial statements of **CHRIS EVANS** in order to continue to secure such

fraudulent financing.

11. The Defendants **CHARLES EVANS** and **CHRIS EVANS** began their scheme with property in Madison County, Mississippi, but eventually expanded the scheme to the Mississippi Gulf Coast, Southaven, Mississippi, and the State of Texas.

12. After the Defendants **CHARLES EVANS** and **CHRIS EVANS** could no longer locate suitable property upon which they could execute this scheme, they began "double pledging" their existing property, that is, they began fraudulently securing new, additional mortgages on their already-encumbered property by selling such property to other companies that they also owned and controlled and manipulating the certificates of title and lien history (and, in some instances, legal descriptions) of such property in order to misrepresent and conceal encumbrances upon such land to the lending financial institutions and to title insurance companies. As a result, each lending financial institution materially relied upon such misrepresentations, believing it had received a priority security interest in said property as collateral for the respective loan when in fact it had not.

13. The Defendant **CHARLES EVANS** would perform the fraudulent title work for these real property transactions, including the creation of false certificates of title upon which the title insurance commitments would be issued and upon which financial institutions would write mortgages and disburse mortgage proceeds to corporations which were owned and controlled by the Defendants, and would perform the closings on most, if not all, of the real estate transactions.

14. Contrary to the representations made by the Defendant **CHARLES EVANS** in certificates of title, record title to the subject property was almost never transferred into the subsequent entity owned and controlled by the Defendants **CHARLES EVANS** and **CHRIS**

EVANS that actually borrowed the funds and in whose name title was insured. Rather, record title almost always remained in the name of the seller corporation owned and controlled by the Defendants. Thus, financial institutions that issued such loans were stuck with outstanding balances owed based upon the Defendants' fraudulent misrepresentations as to the title and lien history of such property.

All in violation of Section 1956(h), Title 18, United States Code.

### COUNT 2

15. That from in or about July 2008 and continuing through in or about October 2008, in Madison County in the Jackson Division of the Southern District of Mississippi, the defendants, **CHARLES EVANS** and **CHRIS EVANS**, knowingly devised and executed a scheme and artifice to defraud and to obtain money under the custody and control of BancorpSouth Bank in Tupelo, Mississippi, the deposits of which were then insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations and promises, in violation of Section 1344, Title 18, United States Code.

### NOTICE OF FORFEITURE

As a result of the offenses alleged in Counts 1 and 2, the defendants, **CHARLES H. EVANS, JR.** and **JON CHRISTOPHER EVANS**, shall forfeit to the United States all property, real or personal, involved in the aforesaid offenses and all property traceable to such property, including but not limited to:

a. United States Currency and all interest and proceeds thereto, in such sum in aggregate is property which was involved in the aforesaid offense or is traceable to such property, in violation of Section 982 and 1956, Title 18, United States Code.

  b. If any of the property described above, as a result of any act or omission of the defendants:

   1. cannot be located upon the exercise of due diligence;

   2. has been transferred or sold to, or deposited with, a third party;

   3. has been placed beyond the jurisdiction of the court;

   4. has been substantially diminished in value; or

   5. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Section 982(b)(1), Title 18, United States Code, to seek forfeiture of any other property of said Defendants up to the value of the above forfeitable property.

*[signature]*
for DONALD R. BURKHALTER
United States Attorney