UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

IN RE: JON CHRISTOPHER EVANS    CASE NO. 09-03763-NPO

DEBTOR    CHAPTER 7

*Jointly Administered with Related Cases*

---

G&B INVESTMENTS, INC.    PLAINTIFF

VS.    ADV. PROC. NO. 10-00040-NPO

DEREK A. HENDERSON, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF JON CHRISTOPHER
EVANS, *et al.*    DEFENDANTS

---

### SUPPLEMENTAL EXPERT REPORT OF JAMES BRUCE DAVIS

James Bruce Davis, an expert witness engaged by Mississippi Valley Title Insurance Company ("MVT") and Old Republic National Title Insurance Company ("Old Republic"), supplements his report pursuant to Fed. R. Civ. P. 26 (a)(2).

This supplemental report responds to the report by the plaintiffs' expert, George M. Pierson, and supplements my list of publications within the past ten years. My additional opinions are based on my knowledge of title insurance industry practices, as described in my prior report, and on interviews with title insurance company officers responsible for dealings between title insurance companies and their issuing agents or approved attorneys, with particular focus on practices in Mississippi.

00014716-1



## Additional Opinions

1. Title insurance companies review the operations of their issuing agents on a regular basis. The reviews are called "audits," but they are not audits in the accounting sense of that term. A review includes a small number of policy files (5 files seems to be the norm), selected at random. The reviewer, usually an agency representative employed by the title insurer, reviews each file to make sure it is complete, all required recording have been made, all closing funds have been properly disbursed, and the policy is supported by appropriate title information.

2. The review includes a review of an issuing agent's escrow account to assure that the agent is reconciling the account on a regular basis. The reviewer also looks for warning signs of escrow shortages. Warning signs include stale deposits in transit and bank notices of dishonored checks or overdrafts.

3. Agency reviews normally do not occur more than once a year. Some agents are reviewed biannually.

4. Title insurance companies conduct agency reviews because the companies may be exposed to liability under title insurance commitments, title insurance policies or closing protection letters if an issuing agent does not perform his duties properly. Title companies do not conduct the reviews for the benefit of third parties, including potential insureds.

5. Title insurance companies typically do not conduct regular reviews of the operations of their approved attorneys. Company practices vary regarding whether a company obtains a contractual right to audit an approved attorney's files. Companies that have a right to

00014716-1

audit their approved attorneys normally do not exercise this right unless there is some reason to suspect a problem with the approved attorney. Various factors account for why title insurance companies treat approved attorneys differently than issuing agents. First, an approved attorney, unlike an issuing agent, does not issue commitments or policies of the company. Second, approved attorneys normally handle fewer transactions than issuing agents. Third, an audit of an approved attorney's files may raise ethical issues regarding the protection of confidential client information.

6. Mortgage lenders rely on the following products issued by title insurance companies: title insurance commitments, title insurance policies, and closing protection letters. Mortgage lenders do not rely on stamps of approval issued by title insurance companies because title insurance companies do not issue stamps of approval.

7. A title insurance company owes no duty to its customers or the general public regarding the selection, supervision or monitoring of the title insurance company's issuing agents or approved attorneys. A title insurance company's duties to its customers are entirely contractual. If the title insurance company issues a title insurance commitment, the company has a contractual obligation to issue a policy if the proposed insured satisfies the commitment's requirements. If the title insurance company issues a policy, the company has a contractual duty to indemnify the insured for losses sustained if the title is not as insured. If the title insurance company issues a closing protection letter, the title insurance company has a contractual obligation to indemnify the addressee for certain kinds of losses the addressee might sustain if the settlement agent named in the closing protection letter fails to follow the addressee's written closing instructions or commits

00014716-1

acts of fraud or dishonesty in handing the addressee's funds or documents in connection with a closing.

8. Unless a title insurance company has issued a closing protection letter, the company owes no duty to indemnify a lender for losses resulting from the fraud or dishonesty of an issuing agent or approved attorney in connection with a closing.

9. An approved attorney's relationship to a title insurance company is that of a provider of title information. The approved attorney provides the information in the form of written certificates of title. The title insurer uses the certificates of title in preparing title insurance commitments and policies. Title insurance companies typically do not forward an approved attorney's certificates to policy holders.

10. If an approved attorney's title certificate contains incorrect information, the legal consequences are as follows: (a) a policy issued in reliance on the certificate will obligate the title insurer to indemnify the policy holder for a loss sustained because the title is not as insured; (b) the insurance company's liability to the policy holder is a contractual liability under the policy, not a tort liability; (c) the approved attorney may be liable for any policy loss paid by the title insurer if an error in the title certificate resulted from the approved attorney's fraud or negligence; and (d) the policy holder has no recourse against the approved attorney for the error because the policy holder was not a beneficiary of the approved attorney's title certificate.

00014716-1

**Additional Article Published Within the Past Ten Years**

"How to Defend Avoidance Actions in Bankruptcy Litigation," THE PRACTICAL REAL ESTATE LAWYER (January, 2011)

**Date**

This Supplemental Report is dated January 5, 2011.

Signed:

*[signature: James Bruce Davis]*

James Bruce Davis

00014716-1