UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

JON CHRISTOPHER EVANS,  CASE NO. 09-03763-NPO

JOINTLY ADMINISTERED WITH RELATED CASES
DEBTOR.  CHAPTER 7

G&B INVESTMENTS, INC.  PLAINTIFF

V.  ADV. PROC. NO. 10-00040-NPO

DEREK A. HENDERSON, TRUSTEE, ET AL.  DEFENDANTS

MEMORANDUM OPINION DENYING
MOTION FOR SUMMARY JUDGMENT AGAINST BANK OF FOREST

This matter came before the Court for consideration on the Title Companies' Motion for Summary Judgment against Bank of Forest (the "Motion") (Adv. Dkt. No. 282) and the Title Companies' Memorandum in Support of Motion for Summary Judgment against Bank of Forest (the "Brief") (Adv. Dkt. No. 283); Bank of Forest's Response to Title Companies' Motion for Summary Judgment (the "Response") (Adv. Dkt. No. 342) and Bank of Forest's Memorandum in Response to Title Companies' Motion for Summary Judgment (the "Response Brief") (Adv. Dkt. No. 343); and the Title Companies' Reply in Support of Motion for Summary Judgment against Bank of Forest (the "Reply") (Adv. Dkt. No. 354) in the above-styled adversary proceeding (the "Adversary"). In this matter within the Adversary, Mississippi Valley Title Insurance Company and Old Republic National Title Company (the "Title Companies") are represented by William C. Brabec and M. Scott Jones. Bank of Forest (the "Bank") is represented by William Liston, III and W. Lawrence Deas.

Having considered the pleadings, the Court finds that the Motion is not well-taken and should be denied. Specifically, the Court finds as follows:[1]

## Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## Summary Judgment Standard

Summary judgment under Fed. R. Civ. P. 56(c) is appropriate when viewing the evidence in the light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that no genuine issue as to any material fact exists, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 234 (5th Cir. June 2, 2010).

Defense of a proper summary judgment motion requires more from the non-moving party than mere allegations or denials of its pleadings. Fed. R. Civ. P. 56(e)(2) provides, in relevant part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.

Fed. R. Civ. P. 56(e)(2). "[O]nce the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with

---

[1] This Memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable by Fed. R. Bankr. P. 7052.

competent summary judgment evidence establishing the existence of a material factual dispute." Versai Mgmt. Corp. v. Clarendon America Ins. Co., F.3d 729, 735 (5th Cir. 2010) (quoting Clark v. America's Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997)).  A party may not "defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 399 (5th Cir. 2008) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).  Summary judgment is "proper if the party opposing the motion fails to establish an essential element of his case." Bradley v. Allstate Ins. Co., 606 F.3d 215, 222 (5th Cir. 2010) (quoting Celotex, 477 U.S. at 322-23).

In any event, "[t]he movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir 1985).  Nevertheless, where there is no opposition to the motion, the court may accept as undisputed the facts set forth in support of the motion for summary judgment, and may grant the motion when the movant's submittals make a prima facie showing of entitlement to judgment as a matter of law.  See Eversley, 843 F.2d at 174; U.S. v. Gustafson, 2010 WL 3167783, *4 (S.D. Tex. Aug. 10, 2010).

**Facts**

The Bank made two separate loans to White Oaks Investment Company ("White Oaks"), an entity controlled by Jon Christopher Evans ("Chris Evans"), one in 2008 ("2008 Loan") and one in 2009 ("2009 Loan").[2]  The Bank allowed Chris Evans, to select his brother, Charles Evans, to serve

---

[2] These undisputed facts are taken from the Brief unless otherwise noted.

as closing attorney for both the 2008 Loan and the 2009 Loan, with Chris Evans to pay closing costs, including attorney's fees. (Ex A. pp. 48-49).[3]

Charles Evans provided a certificate of title on July 1, 2008, stating that title in "Tract T-4" and "Tract T-5" were vested in G&B Investments, Inc. ("G&B"). (Ex. B). On July 17, 2008, Charles Evans submitted an application and attorney's first certificate to the Title Companies. (Ex. C). The Title Companies issued a title commitment to the Bank on July 17, 2008, which reflected that title in Tracts T-4 and T-5 were vested in G&B. (Ex. D). On July 21, 2008, the Bank and White Oaks entered into a loan agreement in the amount of $1,296,500.00 for the purchase of Tracts T-4 and T-5. (Bank of Forest's Amended Cross-Claims against Defendants Mississippi Valley Title Insurance Company, and Old Republic National Title Insurance Company (the "Amended Cross-Claim")) (Adv. Dkt. No. 101). Charles Evans submitted an application and final certificate to the Title Companies on September 17, 2008, stating that title in Tracts T-4 and T-5 were then vested in White Oaks. (Brief p. 4). The Title Companies issued a lender's title policy to the Bank on September 17, 2008. (Amended Cross-Claim ¶ 13; Ex. E).

In 2009, the Bank and White Oaks entered into a loan agreement in the amount of $450,000.00 for the purchase of "Tract T-3." On August 26, 2009, Charles Evans sent the Title Companies an application and attorney's first certificate which showed that title in Tract T-3 was vested in G&B. (Ex. F). The Title Companies issued a title commitment to the Bank on August 26, 2009 (the "2009 Commitment"), which reflected that title in Tract T-3 was vested in G&B. (Adv. Dkt. No. 101 ¶ 19; Ex. G). The Title Companies did not issue a title policy in connection with the 2009 Loan.

---

[3] All exhibits referred to herein are attached to the Motion unless otherwise noted.

According to the Response, the Bank's Amended Cross-Claim stands as reflected in the chart below:

| Count | | Status |
|---|---|---|
| Count I: | Negligent Misrepresentation [2009 Commitment] | Included in the Motion |
| Count II: | Intentional Misrepresentation & Fraud [2009 Commitment] | Included in the Motion |
| Count III: | Negligent Hiring / Retention | Abandoned by the Bank |
| Count IV: | Breach of Contract - Title Commitment | Abandoned by the Bank |
| Count V: | Breach of Contract - Title Policy [2008 Title Policy] | Included in the Motion |
| Count VI: | Promissory Estoppel | Abandoned by the Bank |
| Count VII: | Promissory Estoppel | Abandoned by the Bank |
| Count VIII: | Breach of Obligation of Good Faith and Fair Dealing, Claims Handling | Abandoned by the Bank |
| Count IX: | Extent and Validity of Lien | Not included in the Motion |
| Count X: | Bad Faith | Abandoned by the Bank |
| Count XI: | Civil Conspiracy | Abandoned by the Bank |
| Count XII: | Attorney Fees under F.R.B.P. 7008(b) | Not Included in the Motion |

(Response pp. 1-2). Therefore, this Memorandum Opinion will only discuss the Motion with respect to Counts I, II, and V of the Amended Cross-Claim. This Memorandum Opinion will not discuss any of the claims that have been abandoned by the Bank according to the Response.

With respect to the 2008 Loan, the Bank's claim against the Title Companies sounds in contract. (Amended Cross-Claim, Count V). In Count V, the Bank claims that the Title Companies have breached the 2008 Title Policy by refusing to indemnify the Bank for its losses and damages relating to the title defect including, but not limited, to attorney's fees (the "Bank's Contract Claim"). (*See* Response p. 5). The Title Companies maintain that they have fully satisfied their obligations under the terms of the insurance policy by curing the title defect. (Motion ¶ 5).

With respect to the 2009 Loan, the Bank alleges two claims sounding in tort against the Title Companies in its Amended Cross-Claim (the "Bank's Tort Claims"). (Amended Cross-Claim, Counts I and II). (*See* Response pp. 1-5, Response Brief p. 2). In Count I, the Bank alleges that the Title Companies should be held liable for "negligently misrepresent[ing] to [the Bank] the true state of the title on the property which was pledged as collateral for the loan from [the Bank] on both White Oaks loans." (Amended Cross-Claim, Count I ¶ 40). In Count II, the Bank alleges that the Title Companies should be held liable for "intentionally misrepresent[ing] to [the Bank] the true state of the title of the property which was pledged as collateral by White Oaks to [the Bank]." (Amended Cross-Claim, Count II ¶45). Alternatively, the Bank alleges, in Count II, that the Title Companies should be held liable for the "fraudulent actions" of Charles Evans because they "enabled such fraud to be committed by holding Charles Evans out to the public as an approved attorney. . . ." (Amended Cross-Claim, Count II ¶ 51).

## Issues

I. Are the Title Companies entitled to summary judgment on the Bank's Contract Claim as set forth in Count V of the Amended Cross-Claim?

II. Are the Title Companies entitled to summary judgment on the Bank's Tort Claims as set forth in Counts I and II of the Amended Cross-Claim?

## Discussion

**I. The Title Companies are not entitled to summary judgment on the Bank's Contract Claim as set forth in Count V of the Amended Cross-Claim.**

The Court finds that the Bank has adequately demonstrated in the Response Brief that genuine issues of material fact exist with regard to Count V of the Bank's Amended Cross-Claim. Accordingly, the Court finds that the Title Companies are not entitled to summary judgment on

Count V of the Amended Cross-Claim. The Court also notes that it has the discretion to deny motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed for the trier of fact. Kunin v. Feofanov, 69 F.3d 59, 62 (5th Cir. 1995); Black v. J.I. Case Co., 22 F.3d 568, 572 (5th Cir. 1994); Veillon v. Exploration Services, Inc., 876 F.2d 1197, 1200 (5th Cir. 1989).

> II. **The Court declines to make an *Erie* guess at this juncture and denies summary judgment on the Bank's Tort Claims as set forth in Counts I and II of the Amended Cross-Claim.**

The Court finds that the Bank also has adequately demonstrated in the Response Brief that genuine issues of material fact exist with regard to Counts I and II of the Bank's Amended Cross-Claim. Accordingly, the Court finds that the Title Companies are not entitled to summary judgment on Counts I and II of the Amended Cross-Claim. As previously stated, the Court has the discretion to deny motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed for the trier of fact. Id.

Additionally, the Title Companies correctly assert that the "issue of a title insurer's tort liability is an issue of first impression in Mississippi." (Brief p. 22). In the absence of a final decision by the Mississippi Supreme Court on this issue, the Court understands its duty under Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) and its progeny to resolve the issue as the Mississippi Supreme Court would resolve the issue if presented with the same case. *See* Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003).

As the movant herein, the Title Companies must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(a) (emphasis added). The Title Companies assert that the

> overwhelming majority and modern trend of states that have addressed this issue have either favorably discussed or expressly followed the rule that a title insurer is not liable in tort to the insured for duties performed under the contract unless the title insurer affirmatively assumes additional duties outside the contract.

(Brief p. 24). As a result, they urge the Court to adopt this so-called "majority rule."

At least one treatise suggests, however, the current state of the law on the issue is not as clear as the Title Companies assert. *See* 1 Title Ins. Law § 12:3 (2011). It states that there "is not a 'uniform' or 'prevailing view,' though recently several courts have themselves been guilty of cursory research and cited an incorrect statement in a New Jersey case to say that it is." Id. (*citing* Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 562 A.2d 208 (1989), which is cited by the Title Companies in the Brief at pp. 25 and 26).

The Title Insurance Law treatise notes that many courts have held title insurers can be liable in contract or tort to their insureds. With respect to liability in tort,

> [i]n nearly half of the jurisdictions that have addressed the issue, either courts or legislatures have viewed the substitution of title insurance for abstracts and attorneys' opinions as implying that title insurers assume the duty to conduct a standard title search and disclose all discoverable defects to the title insurance applicant.

Id. (list of jurisdictions at fn. 4). This treatise also notes that many court have adopted a contrary view and held title insurers can only be liable in contract, and not tort, to their insureds:

> courts in many jurisdictions agree with the title insurer that the insurance contract absolutely defines the limits of the insurer's responsibility to its insured. In these states, either courts or lawmakers have determined that issuance of a title insurance policy does not imply that the title insurer provided a full chain of title search or disclosed title defects of a type excluded or generally excepted from the policy's insurance coverage.

Id. (list of jurisdictions at fn. 7).

Having considered the pleadings and other legal authorities, the Court is not persuaded that the Mississippi Supreme Court would determine that the Title Companies are entitled to a judgment

as a matter of law on the Bank's Tort Claims. Accordingly, this Court must deny the Motion. The Court instructs the parties to proceed to trial on the Bank's Tort Claims. The parties will make their record at the trial and have an opportunity to develop further this issue of a title company's tort liability in post-trial briefing.

## Conclusion

Accordingly, for the reasons set forth herein, the Court finds that the Motion is not well-taken and should be denied. A separate order consistent with this Memorandum Opinion will be entered by this Court in accordance with Federal Rules of Bankruptcy Procedure 7054 and 7058.

*/s/ Neil P. Olack*
Neil P. Olack
United States Bankruptcy Judge
Dated: February 11, 2011