UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

    JON CHRISTOPHER EVANS,                CASE NO. 09-03763-NPO

    DEBTOR.                                     CHAPTER 7

JOINTLY ADMINISTERED WITH RELATED CASES


G&B INVESTMENTS, INC.                                      PLAINTIFF

V.                                           ADV. PROC. NO.  10-00040-NPO

DEREK A. HENDERSON, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF JON CHRISTOPHER
EVANS, STEPHEN SMITH, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF CHARLES H.
EVANS, JON CHRISTOPHER EVANS, DEREK A.
HENDERSON, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF HANOVER
INVESTMENTS, LLC, DEREK A. HENDERSON,
TRUSTEE FOR THE BANKRUPTCY ESTATE OF
LANDSDOWNE GROUP, LLC, DEREK A.
HENDERSON, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF TOWN PARK OF
MADISON, LLC, DEREK A. HENDERSON,
TRUSTEE FOR THE BANKRUPTCY ESTATE OF
WHITE OAKS INVESTMENT COMPANY,
DEREK A. HENDERSON, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF TWINBROOK RUN
DEVELOPMENT COMPANY, LLC, BANKFIRST
FINANCIAL SERVICES, MERCHANTS &
FARMERS BANK, BANK OF FOREST,
HERITAGE BANKING GROUP, MISSISSIPPI
VALLEY TITLE INSURANCE COMPANY, AND
OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY                                                    DEFENDANTS


**MEMORANDUM OPINION AND ORDER
ON CROSS-CLAIM OF BANK OF FOREST AGAINST
MERCHANTS & FARMERS BANK RELATED TO TRACT IV
<u>PHASE ONE</u>: LIABILITY AND UNCONTESTED DAMAGES**

This matter came before the Court from February 28 through March 4, 2011, for the liability and uncontested damages phase ("Phase One")[1] of the trial (the "Adversary Trial") on the cross-claim of Bank of Forest ("BOF") against Merchants & Farmers Bank ("M&F").[2]  At the Adversary Trial, John G. Corlew represented BOF, and Jeff D. Rawlings represented M&F.

The relevant pleadings in the above-styled adversary proceeding (the "Adversary") are: First Amended Complaint to Determine Validity, Priority and Extent of Liens and for Other Relief *(Adv. Dkt. No. 21)*[3] filed by G&B Investments, Inc.; Trustee's Answer to First Amended Complaint to Determine Validity, Priority and Extent of Liens and for Other Relief and Counterclaim, Crossclaims and Third Party Complaint *(Adv. Dkt. No. 31)*; Merchants & Farmers Bank's Answer to First Amended Complaint to Determine Validity, Priority and Extent of Liens and for Other Relief and Counterclaim, Crossclaims and Third Party Complaint *(Adv. Dkt. No. 62)*; Amended Answer, Defenses, Counterclaim and Cross Claims of Bank of Forest *(Adv. Dkt. No. 70)*; Amended Answer, Defenses, Counterclaim and Cross Claims of Bank of Forest *(Adv. Dkt. No. 71)*; Answer of Merchants & Farmers Bank to Trustee's Crossclaim Included in Trustee's Answer to First Amended Complaint to Determine Validity, Priority and Extent of Liens and for Other Relief and Counterclaim, Crossclaims and Third Party Complaint (Adversary Proceeding Dkt No. 31) and Counterclaim of Merchants & Farmers Bank Against Trustee Incorporating by Reference Crossclaim

---

[1] The Court entered an Order (Adv. Dkt. No. 413) granting the Joint Motion to Bifurcate Issues of Liability and Damages at Trial (Adv. Dkt. No. 402) on February 25, 2011.  In Phase One of the Adversary Trial, the Court heard only the issues of liability and uncontested damages.

[2] The cross-claims of Mississippi Valley Title Company and Old Republic National Title Insurance Company (the "Title Companies"), BOF, and Heritage Banking Group are addressed by the Court in a separate opinion.

[3] In this paragraph only, citations to the docket entries in this Adversary are italicized to distinguish them from the docket entries included in the captions of some of the pleadings.

Against Trustee (Adversary Proceeding Dkt No. 62) *(Adv. Dkt. No. 73)*; Amended Cross-Claim for Declaratory Judgment and Damages And Third Party Complaint *(Adv. Dkt. No. 74)* filed by Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company, the Title Companies; Bank of Forest's Answer and Affirmative Defenses to Amended Cross-Claim for Declaratory Judgment and Damages and Third Party Complaint of Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company [Dkt. #74] *(Adv. Dkt. No. 75)*; Trustee Henderson's Answer to Merchants & Farmer Bank's Crossclaim (AP Docket No. 62) *(Adv. Dkt. No. 78)*; Trustee Henderson's Answer to Bank of Forest's Crossclaim (AP Docket No. 70) *(Adv. Dkt. No. 80)*; Trustee Henderson's Answer to Bank of Forest's Crossclaim (AP Docket No. 71) *(Adv. Dkt. No. 81)*; Trustee Henderson's Answer to Merchants & Farmer Bank's Counterclaim (AP Docket No. 73) *(Adv. Dkt. No. 82)*; Title Companies' Answer and Affirmative Defenses to Cross-Claim Filed by Bank of Forest *(Adv. Dkt. No. 85)*; Title Companies' Answer and Affirmative Defenses to Cross-Claim Filed by Bank of Forest *(Adv. Dkt. No. 86)*; Bank of Forest's Answer and Defenses to the Crossclaim of Merchants & Farmer Bank *(Adv. Dkt. No. 87)*; Second Amended Complaint to Determine Validity, Priority and Extent of Liens and for Other Relief *(Adv. Dkt. No. 88)*; Response of G&B Investments to Counterclaim of Merchants & Farmers Bank *(Adv. Dkt. No. 97)*; G&B Investments, Inc.'s Response to Bank of Forest's Counterclaim *(Adv. Dkt. No. 98)*; Bank of Forest's Amended Crossclaims Against Defendants Mississippi Valley Title Insurance Company, and Old Republic National Title Insurance Company *(Adv. Dkt. No. 101)*; Bank of Forest's Amended Answer and Affirmative Defenses to Amended Cross-Claim for Declaratory Judgment and Damages and Third Party Complaint of Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company [Dkt. #74] *(Adv. Dkt. No. 102)*; Answer and Defenses of BankFirst Financial Services to the Provisional Cross-Claim of Merchants & Farmers Bank *(Adv.*

*Dkt. No. 105)*; Title Companies' Answer and Affirmative Defenses to Second Amended Complaint filed by G&B Investments, Inc. *(Adv. Dkt. No. 111);* Answer of Bank of Forest to Second Amended Complaint [#88] by G & B Investments, Inc., to Determine Validity, Priority and Extent of Liens and for Other Relief *(Adv. Dkt. No. 112)*; Answer of Merchants & Farmers Bank to Bank of Forest's Crossclaims (Adversary Proceeding Dkt. No. 71) *(Adv. Dkt. No. 113)*; Title Companies' Answer and Affirmative Defenses to Cross-Claim filed by Bank of Forest *(Adv. Dkt. No. 119)*; Answer of Merchants & Farmers Bank to Second Amended Complaint (Adversary Proceeding Dkt. No. 88) by G&B Investments, Inc., to Determine Validity, Priority and Extent of Liens and for Other Relief *(Adv. Dkt. No. 120)*; and Stephen Smith, Trustee for the Bankruptcy Estate of Charles H. Evans' Answer and Defenses to Bank of Forest's Crossclaim *(Adv. Dkt. No. 188)*.

Having considered the pleadings as well as the exhibits, and the arguments of counsel presented at the Adversary Trial, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052:

**Jurisdiction**

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding[4] pursuant to 28 U.S.C. § 157(b)(2)(K) and (O). Notice of the Adversary Trial was proper under the circumstances.

---

[4] This finding of core jurisdiction is undisputed. The Court notes, however, that after the Adversary Trial the United States Supreme Court issued its watershed opinion in Stern v. Marshall, 131 S. Ct. 2594 (2011), in which the Supreme Court nullified as unconstitutional 28 U.S.C. § 157(b)(2)(C) on the ground that it vested jurisdiction in the bankruptcy court (a non-Article III court) to adjudicate a compulsory counterclaim filed by the debtor in response to a proof of claim that arose solely under state law. The implications of the Stern decision remain to be determined.

**Introduction**

Charles H. Evans, Jr. ("Charles Evans") and Jon Christopher Evans ("Chris Evans") (together, the "Evans Brothers") pled guilty on January 18, 2011, to conspiracy to commit money laundering and bank fraud. The Evans Brothers are the subject of a separate opinion rendered by this Court on this same date regarding the consequences of their fraudulent conduct. In that opinion, the Court sets forth in detail the background facts and the procedural history of all claims, counterclaims, and cross-claims related to a tract of prime commercial real estate in Madison County, Mississippi, that was part of the Evans Brothers' fraudulent scheme. Those matters will not be repeated here. A detailed discussion of the basis for the Court's opinion as to the separate cross-claim considered here is found in the findings of fact and conclusions of law sections of this opinion. This introduction provides only an overview of the Evans Brothers's scheme to lay a context for the present dispute.

On July 23, 2008, Charles Evans, purportedly acting on behalf of Hanover Investments, LLC ("Hanover"), entered into an agreement with G&B Investments, Inc. ("G&B") to purchase 105 acres of real estate alongside Highway 463 in Madison County, Mississippi. The 105 acres are referred to herein as "Tract IV."

Before Hanover purchased Tract IV, the Evans Brothers borrowed approximately $5 million from three Mississippi commercial lenders, including M&F. The Evans Brothers, through different corporate entities they formed for the purpose of purchasing real estate, granted deeds of trust to the commercial lenders on smaller parcels of Tract IV to secure the loans when Tract IV was still owned by G&B, that is, before G&B had sold Tract IV to Hanover and, therefore, *before* Hanover had itself sold the parcels to the respective borrowers.

On July 23, 2008, Hanover paid G&B, the owner of Tract IV, $5 million–most of it borrowed

from M&F–the cash portion of the $16 million total purchase price. G&B financed the remaining $11 million by a note secured by a deed of trust executed by Charles Evans on behalf of Hanover.

Because G&B had agreed to release a prorated portion of Tract IV from the deed of trust upon payment of any portion of the purchase price, the deed of trust signed by Charles Evans on behalf of Hanover did not include approximately 28 acres of Tract IV. These 28 acres are referred to herein as the "Released Parcels." Carved out of the Released Parcels are smaller tracts of land, which are identified herein as Parcels T-1 through T-6.

M&F had a deed of trust on Parcel T-2 (15.912 acres) and Parcel T-3 (5.541 acres), purportedly granted by Charles Evans on behalf of Town Park of Madison, LLC ("Town Park"). After M&F's deed of trust was recorded, but before the deed conveying the property to Hanover was recorded, BOF obtained a deed of trust on Parcel T-3, purportedly granted by Chris Evans acting on behalf of White Oaks Investment Company, LLC ("White Oaks"). Because Charles Evans was on the list of attorneys "approved" by the Title Companies, he was able to submit false applications for title commitments and title insurance policies showing that corporations owned the land when they did not.

The Evans Brothers' fraudulent scheme as to Tract IV did not end after Hanover purchased Tract IV. Instead, they engaged in the same scam over and over again and sometimes, when no other property was available, granted deeds of trust on the same parcel, such as the scam involving Parcel T-3, which is the subject of this Adversary. The Evans Brothers' march to justice began in early September 2009, when the Title Companies removed Charles Evans's name from their list of approved attorneys.

**Findings of Fact**

The Court adopts and incorporates the facts as set forth by the parties in the stipulation of

facts in the Pretrial Order on Crossclaims of Bank of Forest and Merchants & Farmers Bank ("Pretrial Order") (Adv. Dkt. No. 408-1) with primarily stylistic changes:

1. Town Park is a limited liability company duly formed under the laws of the State of Mississippi and was created on July 2, 2008. Town Park has remained in good standing since its creation to date.

2. White Oaks is a limited liability company duly formed under the laws of the State of Mississippi and was created on July 18, 2008. White Oaks has remained in good standing since its formation to date.

   **M&F and Town Park**

3. On July 18, 2008, Town Park executed a note and deed of trust to M&F. The note is for $3,000,028.00. The Town Park deed of trust to M&F on July 18, 2008, was recorded on January 6, 2009. The deed of trust grants a security interest in Parcels T-2 and T-3.

4. Chris Evans represented to M&F that Town Park's loan was for the purchase of the property subject to the deed of trust and that title to the subject property would be vested in Town Park. All of the M&F loan proceeds have been traced to payment of part of the purchase price for Parcels T-2 and T-3.

5. Hanover recorded a deed to Parcels T-2 and T-3 to Town Park on September 11, 2009.

6. On September 11, 2009, Mississippi Valley Title Insurance Company, on behalf of M&F, filed a lis pendens notice advising of its lawsuit against Hanover and Town Park seeking conveyance of Parcels T-2 and T-3 from Hanover to Town Park and an equitable lien on that property.

7. Town Park filed a petition under chapter 7 of the United States Bankruptcy Code on November 19, 2009. Hanover filed a petition under chapter 7 of the United States Bankruptcy Code on November 21, 2009. Derek A. Henderson was appointed the trustee of the estates of Town Park and Hanover ("Trustee Henderson").

8. As of February 14, 2011, the current amount of the indebtedness to M&F on account of the promissory note described in paragraph 3 herein above is $3,269,560.34, exclusive of fees and expenses.

   **BOF and White Oaks**

9. On August 27, 2009, White Oaks executed a note to BOF in the amount of $451,450.00. The note was secured by a deed of trust on Parcel T-3. The deed of trust was recorded on September 18, 2009.

10. Chris Evans represented to BOF that the purpose of the loan was to provide purchase money for acquisition of Parcel T-3 from G&B and it was represented that title would be vested in White Oaks. He presented a Purchase Agreement reflecting that the subject property would be purchased for $1,520,000.00. In fact, the loan proceeds were not used for the purchase of the subject property; the title to the property at the time was vested in Hanover, and no conveyance was ever made of Parcel T-3 to White Oaks.

11. On November 20, 2009, White Oaks filed a petition under chapter 7 of the United States Bankruptcy Code. Trustee Henderson was appointed the trustee of the estate of White Oaks.

12. As of February 1, 2011, the current amount of the indebtedness to BOF on account of the promissory note described in paragraph 9 herein above is $489,969.71, exclusive of fees and expenses.

13. On August 25, 2009, an appraisal for BOF on Parcel T-3 reflected a value of $1,629,000.00.

14. An Order Approving Compromise and Settlement Regarding Parcel T-6 and Parcels T-2 and T-3 (the "Settlement Order") (Adv. Dkt. No. 432) was noticed out to all parties in interest on February 14, 2011, wherein it recognized the competing claims of M&F and BOF with respect to Parcel T-3 and its jurisdiction with respect to the pending Adversary with respect to that parcel. Except to the extent that excess funds over any indebtedness secured by Parcel T-3 might be realized, Trustee Henderson asserts no interest in Parcel T-3.

15. The Settlement Order also provides that Parcel T-2 is to be deeded by Trustee Henderson to M&F in lieu of foreclosure, subject to any order this Court might enter with respect to the marshaling of claims of the BOF insofar as those claims would affect the sale and disposition of proceeds of any sale of Parcel T-2.[5]

---

[5] The Settlement Order states in pertinent part:

Subject to court order, if any, as to BOF marshalling (sic) claims as to Parcel T-2, the [11 U.S.C.] § 362 automatic stay shall be and hereby is terminated as to Parcels T-6 and T-2. Heritage, BankFirst, M&F, BOF and the Title Companies may proceed to exercise their rights against the property in accordance with their respective loan documents and applicable law. In the event any funds are recovered by Heritage, BankFirst, M&F, BOF and/or the Title Companies in excess of their total claims related to Parcels T-6, T-2 and/or T-3, the excess funds shall be paid to the Trustee [Henderson].

Settlement Order ¶ 33(O).

**Conclusions of Law**

The common-law rule regarding interest in property gives the highest priority to the first interest created in the property. *See* Richard R. Powell & Patrick J. Rohan, POWELL ON REAL PROPERTY § 82.01. This rule, commonly known as "first in time, first in right," is based on the principle that an entity cannot give away what it no longer owns. Id. Mississippi's recording law, Miss. Code Ann. §§ 89-5-1 to 89-5-45, changes the common-law rule by giving an entity a way of protecting its interest. Mississippi subscribes to a "race-notice" system that allows an entity recording an interest to take priority over someone with a senior interest, as long as it lacks notice of the prior, unrecorded interest. *See* Kelly v. Shoemake, 460 So. 2d 811, 822-23 (Miss. 1984). The "race" aspect of the "race-notice" system is an application of the "first in time, first in right" common-law rule; the "notice" aspect refers to a situation where an entity has actual knowledge of a prior conveyance.

Accordingly, when a lender records an interest (such as a deed of trust) without notice of any prior unrecorded interest, it has the better right or priority as to all later recorded interests, regardless of when the conveyances actually occurred. Miss. Code Ann. § 89-5-3. The resulting rule is that the first recorded interest has priority over all subsequently recorded interests.

> Every conveyance . . . and deed of trust shall take effect, as to all creditors and subsequent purchasers for a valuable consideration without notice, only from the time when delivered to the clerk to be recorded; and no conveyance . . . or deed of trust which is unrecorded or has not been filed for record, shall take precedence over any similar instrument affecting the same property which may be of record, to the end that with reference to all instruments which may be filed for record under this section, the priority thereof shall be governed by the priority in time of the filing of the several instruments, in the absence of actual notice.

Miss. Code Ann. § 89-5-5. In this way, Mississippi's race-notice system assures a lender who searches the public records that the interest it is about to receive is paramount–by providing

constructive notice of prior conveyances to any subsequent lenders and by giving it priority over them.

In Mississippi, a deed of trust creates a type of consensual lien that attaches to specific real property and is recorded with the clerk of the chancery court in the county where the property is located. Miss. Code Ann. § 89-5-3. The chancery clerk must record deeds and other instruments in the order in which they were filed and must enter the date, hour, and minute each document was presented for recording. Miss. Code Ann. § 89-5-25. The public records maintained by the chancery clerk, therefore, provide a history of the title to property in the county where the property lies.

The deed of trust that Town Park granted M&F on Parcels T-2 and T-3 was recorded on January 9, 2009, but was ineffective against any later purchaser or lender because the record did not show any conveyance of the property to Town Park. *See* Baker v. Griffin, 50 Miss. 158 (Miss. 1874) (record notice is dispositve); Hart v. Gardner, 33 So. 497 (Miss. 1903) (a party cannot be charged with notice of conveyances that do not appear in its chain of title). Later, M&F obtained a warranty deed conveying the property from Hanover to Town Park. Under the doctrine of after-acquired title (or estoppel by deed), this conveyance from Hanover to Town Park rendered M&F's deed of trust from Town Park effective on September 11, 2009, the date the deed from Hanover was recorded. "Where a grantor who has no title, whose title is defective, or whose estate is less than that which he assumes to pass, conveys by warranty or covenants of like import and subsequently acquires the title or estate which he purports to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee, or to his benefit, by way of estoppel." Turner v. Miller, 276 So. 2d 690, 693 (Miss. 1973); *see* Miss. Code Ann. § 89-1-39.

When White Oaks granted BOF a deed of trust on Parcel T-3 on August 27, 2009, M&F's deed of trust was outside the chain of title to the property and, therefore, was not reasonably

discoverable by BOF. Later, when BOF's deed of trust was recorded on September 18, 2009, M&F's deed of trust had already become enforceable as the result of the intervening conveyance by Hanover. "[A]fter filing with the clerk, the priority of time of filing shall determine the priority of all conveyances of the same land as between the several holders of such conveyances." Miss. Code Ann. § 89-5-1.

Although M&F's deed of trust would normally have priority under Mississippi law, BOF urges this Court to disregard the after-acquired title doctrine because BOF had no notice of the earlier M&F deed of trust and because both banks were equally innocent victims of fraud. United States v. Energy Res. Co., Inc., 495 U.S. 545 (1990) (as courts of equity, bankruptcy courts have broad authority to modify creditor/debtor relationships). As a remedy, BOF asks the Court to distribute the proceeds from the sale of Parcel T-3 proportionately based on (1) the amount owed M&F *after* applying the net proceeds from the sale of Parcel T-2 and (2) the full amount owed BOF.[6] In support of its contention that the banks should share the sales proceeds from Parcel T-3, BOF relies on Cunningham v. Brown, 265 U.S. 1 (1924), and invokes the doctrine of marshaling of assets. The Court addresses each of these contentions in turn.

**A. Ponzi**

The United States Supreme Court's decision in Cunningham arose from six lawsuits brought by the trustees in the bankruptcy case of Charles Ponzi ("Ponzi"). Between 1919 and 1921, Ponzi convinced 40,000 Bostonians to put money into a fictitious investment by promising them 50% returns in 45 days. Ponzi paid investors from new investment money, rather than from actual profits,

---

[6] Assumably, application of this formula would mean that if the sale of Parcel T-2 reduced the debt owed to M&F by 75%, then M&F would be eligible to receive only 25% of the net proceeds from the sale of Parcel T-3. BOF would receive the remaining net sales proceeds.

and was taking in $1 million a week when his scam was uncovered. Today, this type of investment fraud is known as a "Ponzi."

The issue addressed in Cunningham was whether the trustees could recover as unlawful preferences funds withdrawn from Ponzi's bank account by some of his investors just before Ponzi filed his bankruptcy petition. The lower courts found that these investors had rescinded their loan contracts and were entitled to a return of their own money. The United States Supreme Court disagreed, holding that all of Ponzi's creditors were equally innocent victims and all the funds in Ponzi's account were fruits of his fraud, including the money recovered by some of his investors.

The Court finds that BOF's reliance on Cunningham is misplaced. Unlike Ponzi's creditors, BOF and M&F do not share a common debtor. It is undisputed that Town Park and White Oaks are separate and distinct corporate entities. Also, unlike M&F, BOF does not have an enforceable lien on Parcel T-3 because White Oaks never acquired title to Parcel T-3.

**B.    Marshaling of Assets**

BOF also invokes the doctrine of marshaling of assets. According to the United States Supreme Court in Meyer v. United States, 375 U.S. 233 (1963):

> The equitable doctrine of marshaling (sic) rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.

Id. at 236. Generally, three elements must be satisfied before the doctrine may be applied: (1) the existence of two secured creditors with a common debtor, (2) the existence of two funds belonging to the debtor, and (3) the right of the senior creditor to satisfy its demand from more than one fund, while the other creditor may resort to only one fund. Meyer, 375 U.S. at 236-37.

BOF claims that the Mississippi Supreme Court in Dilworth v. Federal Reserve Bank of St. Louis, 154 So. 535 (Miss. 1934), applied the doctrine under facts similar to those presented here:

Page 12 of 14

> The equitable remedy of marshaling securities . . . depends upon the principle that a person having two funds to satisfy his demands shall not, by his election, disappoint a party having but one fund. The general rule is that if one creditor by virtue of a lien or interest can resort to two funds, and another to one of them only—as . . . *where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another*—the former must seek satisfaction out of that fund which the latter cannot touch.

Id. at 540 (emphasis added).

The Court finds that for the same reasons why the facts in Dilworth are distinguishable, BOF cannot satisfy the first element. First, BOF, unlike M&F, is not a secured creditor. Yet, only secured creditors have authority to invoke the doctrine of marshaling. *See* Peoples Bank v. The Computer Room, Inc. (In re The Computer Room, Inc.), 24 B.R. 732, 735 (Bankr. N.D. Ala. 1982). Second, BOF and M&F are not creditors of the same debtor. As mentioned previously, White Oaks and Town Park are separate and distinct corporate entities. To meet the common debtor requirement, therefore, BOF would have to persuade this Court to pierce their corporate veils, but BOF did not present any evidence in that regard at the Adversary Trial. *See* Coors of N. Miss., Inc. v. Moak (In re Coors of N. Miss., Inc.), 66 B.R. 845, 867 (Bankr. N.D. Miss. 1986).

Finally, there is an additional gloss on the doctrine of marshaling. Because it is an equitable doctrine, it may only be invoked when the senior creditor will not suffer prejudice. In re Wm. Pietsch Co., 200 B.R. 207, 210 (Bankr. E.D. Wis. 1996). Here, however, M&F will be prejudiced by having only Parcel T-2 and a portion of Parcel T-3 available to it as collateral, rather than all of the property, which could render it an undersecured creditor.

## Conclusion

To grant the relief BOF requests, this Court would have to ignore the statutory priority of the M&F lien, pierce the corporate veils of White Oaks and Town Park, and change M&F's status from a secured creditor to a potentially undersecured creditor. Although daring in its execution, the fraud

committed by the Evans Brothers against BOF is insufficient reason to undo M&F's lien priority. The Court is not unsympathetic but its equitable powers may only be exercised within the confines of the Bankruptcy Code and applicable law. *See* Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988).

In conclusion, the Court finds that the relief requested in the cross-claim of BOF against M&F is not well taken and that the cross-claim should be dismissed with prejudice. Final judgment will not be entered at this time because this finding does not result in the disposition of all claims asserted in this Adversary.

SO ORDERED.

_____
Neil P. Olack
United States Bankruptcy Judge
Dated: October 7, 2011