UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

JON CHRISTOPHER EVANS,            CASE NO. 09-03763-NPO

DEBTOR.            CHAPTER 7

JOINTLY ADMINISTERED WITH RELATED CASES


G&B INVESTMENTS, INC.            PLAINTIFF

V.            ADV. PROC. NO. 10-00040-NPO

DEREK A. HENDERSON, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF JON CHRISTOPHER
EVANS, STEPHEN SMITH, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF CHARLES H.
EVANS, JON CHRISTOPHER EVANS, DEREK A.
HENDERSON, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF HANOVER
INVESTMENTS, LLC, DEREK A. HENDERSON,
TRUSTEE FOR THE BANKRUPTCY ESTATE OF
LANDSDOWNE GROUP, LLC, DEREK A.
HENDERSON, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF TOWN PARK OF
MADISON, LLC, DEREK A. HENDERSON,
TRUSTEE FOR THE BANKRUPTCY ESTATE OF
WHITE OAKS INVESTMENT COMPANY,
DEREK A. HENDERSON, TRUSTEE FOR THE
BANKRUPTCY ESTATE OF TWINBROOK RUN
DEVELOPMENT COMPANY, LLC,  BANKFIRST
FINANCIAL SERVICES, MERCHANTS &
FARMERS BANK, BANK OF FOREST,
HERITAGE BANKING GROUP, MISSISSIPPI
VALLEY TITLE INSURANCE COMPANY, AND
OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY            DEFENDANTS


MEMORANDUM OPINION ON CROSS-CLAIM
OF HERITAGE BANKING GROUP AGAINST MISSISSIPPI
VALLEY TITLE INSURANCE COMPANY AND OLD REPUBLIC
NATIONAL  TITLE INSURANCE COMPANY RELATED TO TRACT IV
<u>PHASE TWO</u>: <u>CONTESTED DAMAGES</u>

Page 1 of  6

The liability and uncontested damages phase ("Phase One") of this adversary proceeding (the "Adversary") took place from February 28 through March 4, 2011. In Phase One, the Court found that Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (the "Title Companies") had breached the title insurance policy they issued Heritage Banking Group ("Heritage") by underpaying its claim. *See* G&B Investments, Inc. v. Henderson (In re Evans), Adv. No.10-00040-NPO, 2011 WL 4712176 (Bankr. S.D. Miss. Oct. 7, 2011) (the "Liability Opinion") (Adv. Dkt. 446).

On December 2, 2011, the contested damages phase ("Phase Two") of the trial on the cross-claim of Heritage against the Title Companies came before the Court.[1] In Phase Two, William C. Brabec and Michael Scott Jones represented the Title Companies, and Michael D. Simmons represented Heritage.

Having considered the pleadings as well as the testimony, exhibits, and the arguments of counsel presented at Phase One and Phase Two, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052:

**Jurisdiction**

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and (O).[2] Notice of Phase Two was proper under the circumstances.

---

[1] In the Liability Opinion, the Court found in favor of not only Heritage but also Bank of Forest. The amount of damages that Bank of Forest is entitled to receive has been scheduled for trial at a later date and is not addressed in this Opinion.

[2] This finding of core jurisdiction is undisputed. *See* Pretrial Order at 2 (Adv. Dkt. 408).

**Facts**

The complicated procedural history and factual background of the Adversary are set forth in detail in the Liability Opinion. Only those facts necessary for an understanding of the reason for the Court's decision on the damages issue are discussed here. These facts are taken in large part from the Stipulation of Facts for Phase Two of Adversary Trial: Heritage Bank's Contested Damages (Phase II: Joint Ex. 1) (Adv. Dkt. 462), submitted by the parties on November 21, 2011.[3] A portion of the stipulated facts follows below, along with those facts developed in Phase Two:

1. The Title Companies issued a loan policy of title insurance (the "Heritage Policy"), bearing number LP 10759, to Heritage on October 28, 2008.

2. The "Amount of Insurance" stated in the Heritage Policy is $781,980.00.

3. Heritage submitted a claim to the Title Companies under the Heritage Policy on November 20, 2009.

4. Twinbrook Run Development Company, LLC ("Twinbrook") filed a petition for relief under the Bankruptcy Code on December 22, 2009. (Case No. 09-04492, Dkt. 1).

5. The amount of "Indebtedness" on the note signed by Twinbrook was $750,585.80, as of December 22, 2009.

6. The Title Companies paid Heritage $430,000.00 on July 21, 2010, for its claim under the Heritage Policy.

7. The amount of "Indebtedness" on the note signed by Twinbrook was $795,554.03, as of July 21, 2010, the date the Title Companies paid Heritage's claim.

8. Heritage alleges that the Title Companies should have paid it the "Amount of

---

[3] By stipulating to these facts, the Court notes that the parties did not intend to waive any issue on appeal.

Insurance," $781,980.00, and, therefore, the Title Companies owe Heritage at least an additional $350,000.00.

9.     The parties agree that ¶8(a) of the Heritage Policy, referred to as the "Maximum Payment Provision," governs the extent of liability of the Title Companies:

> 8.     DETERMINATION AND EXTENT OF LIABILITY
> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.
> (a)     The extent of liability of the Company for loss or damage under this policy shall not exceed the least of
>    (i)     the Amount of Insurance,
>    (ii)    the Indebtedness,
>    (iii)   the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or . . . .

**Discussion**

The Maximum Payment Provision defines the scope of the Title Companies' liability as whatever amount is the least of three varying amounts. In light of the decision reached by the Court in Phase One, the parties agree that ¶8(a)(iii), the "difference in value" provision, does not apply because that amount clearly would exceed the amounts calculated under either ¶8(a)(i) or ¶8(a)(ii). Accordingly, the sole dispute in Phase Two is whether ¶8(a)(i) or ¶8(a)(ii) applies in determining the proper amount of Heritage's damages.

Heritage maintains that ¶8(a)(i), the "Amount of Insurance" provision, governs the extent of the Title Companies' liability. That amount is $781,980.00. (Phase I: Heritage Ex. 4). Because the Title Companies have paid $430,000.00, Heritage contends that an additional $351,980.00 is owed. According to Heritage, ¶8(a)(ii), the "Indebtedness" provision, does not apply because Twinbrook owed Heritage $795,554.03, as of July 21, 2010, when the Title Companies partially paid

its claim, and, therefore, the amount of "Indebtedness" is not less than the "Amount of Insurance." (Phase II: Heritage Ex. 2). Heritage also seeks pre-judgment interest on the amount owed, calculated at the federal judgment rate from July 21, 2010, the date the Title Companies paid their claim. It was on this date, according to Heritage, that the total amount due under the Heritage Policy became liquidated. See Liberty Mut. Fire Ins. Co. v. Canal Ins. Co., 177 F.3d 326, 339 (5th Cir. 1999) (applying Mississippi law); *see also* Meaux Surface Prot., Inc. v. Fogleman, 607 F.3d 161, 172 (5th Cir. 2010) (recognizing that state law governs award of pre-judgment interest).

In contrast, the Title Companies maintain that ¶8(a)(ii) limits their liability to the amount of the loan balance as of December 22, 2009, the date Twinbrook filed its petition for relief. According to the proof of claim filed by Heritage, that amount was $761,320.20. (Case No. 09-03763-NPO, Claim 73) (Phase II: Title Companies Ex. 2). When the prior payment to Heritage of $430,000.00 is subtracted from the claim amount, the Title Companies owed an additional $331,320.20. According to the Title Companies, ¶8(a)(ii), rather than ¶8(a)(i), applies because $761,320.20, the amount of the "Indebtedness," is less than $781,980.00, the "Amount of Insurance." The Title Companies do not offer any statutory or case authority that supports their position that Twinbrook's bankruptcy filing on December 22, 2009, stopped the accrual of interest as to their liability to Heritage under the Heritage Policy. They admit that there is no support for their position in the Heritage Policy itself. Their sole argument is equitable in nature: why should they be held responsible for interest payments after December 22, 2009, if Twinbrook is not? The Title Companies further maintain that Heritage is not entitled to *any* pre-judgment or post-judgment interest and do not support any specific percentage rate. Again, the Title Companies do not offer any authority for their position on interest.

The Court agrees with Heritage. Notably, the Title Companies were unable to point to any provision in the Heritage Policy or in bankruptcy law that limits their liability to amounts recoverable from a debtor's bankruptcy estate, and the Court has found none. Under the Maximum Payment Provision, the "least" amount is clearly the "Amount of Insurance" provision under ¶8(a)(i) for the reasons articulated by Heritage. Moreover, Heritage is entitled to the interest it requests.

## Conclusion

In conclusion, the Court finds that the Title Companies are liable to Heritage for breach of the Heritage Policy in the amount of $351,980.00, plus pre-judgment interest at the federal rate prescribed by 28 U.S.C. § 1961(a), calculated from July 21, 2010, until the date of this judgment, and post-judgment interest, also at the federal rate provided for in 28 U.S.C. § 1961(a), from the date of this judgment until paid in full.

A separate final judgment of all matters asserted by Heritage in this Adversary will be entered in accordance with Federal Rule of Bankruptcy Procedure 7058.

SO ORDERED.

_____
Neil P. Olack
United States Bankruptcy Judge
Dated: December 15, 2011